**CHICAGO DISTRICT COUNCIL OF CARPENTERS PENSION FUND, et al., Plaintiffs,**

v.

**Joseph L. DOMBROWSKI, Defendant.**

No. 80 C 6092.

United States District Court, N. D. Illinois, E. D.

Aug. 5, 1982.

Collins P. Whitfield, Albert M. Madden, Hugh J. McCarthy & Associates, Ltd., Chicago, Ill., for plaintiffs.

George B. Collins, Collins & Amos, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Chicago District Council of Carpenters Pension Fund, Chicago District Council of Carpenters Health and Welfare Fund and Chicago District Council of Carpenters Apprentice and Training Fund (collectively "Trust Funds") bring this action against Joseph L. Dombrowski ("Dombrowski") for unpaid contributions to Trust Funds. Trust Funds have moved in limine for the exclusion of any evidence as to fraud or duress on the part of Chicago District Council of Carpenters ("Union") in procuring Dombrowski's signature on the collective bargaining agreement.[1] For the reasons stated in this memorandum opinion and order that motion is granted.

Dombrowski contends his promise to make fund contributions is unenforceable because the collective bargaining agreement itself is unenforceable. Trust Funds essentially argue the two sets of promises are independent of each other.

■ Under traditional contract law third party beneficiaries are subject to any contract defenses generally available against the contracting parties themselves. In an obvious sense trustees of employee benefit funds are third party beneficiaries of the collective bargaining agreements that require contributions to those funds: Trustees are not signatories to the contracts, but contract provisions are deliberately inserted for their benefit as such trustees.

Nonetheless many courts have held, following the lead of *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960), that the full range of third party beneficiary doctrine does not apply to the collective bargaining agreement. In *Benedict Coal* the employer, sued by trustees for delinquent contributions, charged the union had violated the no-strike clause contained in the contract and sought to set off any damages caused by the strike against any delinquent contributions. That argument was rejected by a 7–1 Supreme Court decision.

■ But an employer is not barred from raising all defenses based on the contract. Just last Term, in *Kaiser Steel Corp. v. Mullins*, —— U.S. ——, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982), the Supreme Court dealt with employer contributions to a trust fund partly linked to whether or not it purchased coal for producers under contract with the union. When the trustees sued for delinquent contributions the employer successfully defended by arguing such contributions were void and unenforceable as violative of Sections 1 and 2 of the Sherman Act and Section 8(e) of the National Labor Relations Act. In the Court's view contributions would not be ordered because the very act of making a contribution was unlawful.

■ Fraud and duress defenses do not fit squarely within either *Benedict Coal* or *Kaiser Steel*. In *Benedict Coal* the conduct the employer sought to raise as a defense was unrelated to the alleged delinquencies. In contrast, Dombrowski asserts fraud and duress in the formation of the very contract that established the right to the contributions. But *Kaiser Steel* does not provide direct precedent either. There the very act of making the required contributions was illegal. Here the contributions themselves would be wholly lawful, but Dombrowski argues he should not have to make them because his consent to the underlying con-

---

1. Dombrowski's allegation of fraud and duress as to the collective bargaining agreement is actually an affirmative defense. Trust Funds' motion would more properly be one to strike the affirmative defense as insufficient in law.

tract (including the promise to contribute) was not validly obtained.

Nor does *Kaiser Steel* provide a clear guide to resolution of the question. It contains two conflicting hints as to the continued scope and vitality of *Benedict Coal*:

At one point in the opinion the Court states, 102 S.Ct. at 859 n.8:

> As the Court of Appeals recognized, "[T]hird party beneficiaries, like the Trustees here, are subject to the contract defenses of non performing promissors." 206 U.S.App.D.C. 334, 344, 642 F.2d 1302, 1312. In this respect, pension fund trustees have no special status which exempts them from the general rule that courts do not enforce illegal contracts. Only Congress could create such an exemption and, as discussed in Part IV, it has not done so.[2]

Footnote 8 might indicate *Benedict Coal* is to be read in a very limited fashion.

But a somewhat later section of *Kaiser Steel* points in a different direction. When Congress passed the Multi-employer Pension Plan Amendments Act of 1980 (the "Act") several congressmen made statements concerning the case law that had developed in the pension contribution area. Two senators in particular, in explaining the purpose of one of the sections of the amended legislation,. specifically endorsed the approach taken in *Benedict Coal* as well as several other cases—one of them *Lewis v. Mill Ridge Coals, Inc.*, 298 F.2d 552 (6th Cir. 1962), barring an employer's defense to an action for delinquent contributions on grounds the underlying contract was void for lack of consideration. In *Kaiser Steel* the Supreme Court said *Mill Ridge* did not conflict with the Court's current decision because *Mill Ridge* did not (102 S.Ct. at 861):

**2.** That footnote may gain force because it actually quoted the Court of Appeals somewhat out of context. What the Court of Appeals really said was, *Mullins v. Kaiser Steel Corp.*, 642 F.2d 1302, 1312 (D.C.Cir.1980):

> As a rule, third-party beneficiaries, like the Trustees here, are subject to the contract defenses of non performing promissors. But

[involve] a defense based on the illegality of the very promise sought to be enforced.

That section of *Kaiser Steel* might perhaps be read as an implicit acceptance of *Mill Ridge*, and lack of consideration does have some similarities to the fraud and duress defense asserted here.

At this point this Court, like the parties, must pick out the line between *Benedict Coal* and *Kaiser Steel* in a reasoned way. One aid to that process is to examine the language and purpose for adoption of Section 306(a) of the Act, 29 U.S.C. § 1145 (the section under discussion in *Kaiser Steel* when the majority opinion distinguished both *Benedict Coal* and *Mill Ridge*):

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

As both the majority and dissenting opinions in *Kaiser Steel* recognized, Congress wanted to protect the integrity of employee benefit trust funds while still permitting limited kinds of illegality defenses to be asserted by non-contributing employers.

If Dombrowski were asserting he was legally incompetent when the collective bargaining agreement was signed, this Court would have no difficulty finding the defense more akin to *Kaiser Steel* than to *Benedict Coal*. In that situation the essence of the contractual relationship would be lacking, and the anomaly of permitting enforcement of one part of the contract (or non-contract)—the promise to contribute to Trust Funds—would be maximized.

Fraud and duress pose a closer question, somewhat close (though not wholly parallel)

the trustees of a union welfare fund are sometimes immune from contract defenses that could be asserted against the union itself because such a rule better serves the concern of federal labor policy to protect union members and their families from the actionable wrongs of their union representatives.

to the lack of consideration defense in *Mill Ridge* and like cases. Though the claim may be framed in terms like lack of capacity (no "meeting of the minds," or the "overbearing of one's will"), the fact remains that unlike an incompetent party the allegedly imposed-upon party could treat the underlying contract as voidable and repudiate it as soon as the fraud or duress became known.

Here Dombrowski knew of the claimed duress from the very beginning. His stated reason for non-repudiation of the collective bargaining agreement even to the present time is that he "continues to desire to perform work in the City of Chicago, and could not expect anything better than to have his jobs closed if he operated a non-union job" (Def. Mem. 5). Thus Dombrowski has made the judgment that he will live with the collective bargaining agreement in his own economic self-interest, but he wishes to be relieved of one of the costs of doing business—the Trust Fund contributions—that his competitors who have also signed the collective bargaining agreement must bear.

Under such circumstances the reasoning of *Todd v. Jim McNeff, Inc.,* 667 F.2d 800 (9th Cir. 1982), though pre-*Kaiser Steel,* remains persuasive. *Todd* found an allegedly coerced collective bargaining agreement subject to repudiation, but held it fully enforceable by benefit fund trustees until so repudiated (*id.* at 803–04). See also *Huge v. Long's Hauling Co.,* 590 F.2d 457, 465 (3rd Cir., Adams, J., concurring).

This resolution comports with both *Kaiser Steel* and *Benedict Coal* and with the underlying policy interests as well. After all, Dombrowski has not alleged any coercion or fraud on the part of Trust Funds. Instead his claim is really against the union. If Dombrowski feels he was coerced into signing the contract he should file an action against the union or terminate the contract, relieving himself of *future* contributions. But an employer should not be permitted to tie up simple contribution actions with this kind of contract law defense really aimed at the union.

*Conclusion*

Plaintiffs' motion in limine is granted. Dombrowski shall not be permitted to present evidence related to fraud or duress in the execution of the collective bargaining agreement.