728 F.2d 1262
 115 L.R.R.M. (BNA) 3529, 100 Lab.Cas. P 10,902,
5 Employee Benefits Ca 1285
 SOUTHERN CALIFORNIA RETAIL CLERKS UNION AND FOOD EMPLOYERS
JOINT PENSION TRUST FUND; Retail Clerks Unions
and Food Employers Benefit Fund,
Plaintiffs-Appellees,
v.
Erling T. BJORKLUND, individually and d/b/a Muzio's Market,
Defendant-Appellant.
 Nos. 83-5848, 83-5852.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 9, 1983.
Decided March 21, 1984.
 
 Stuart Libicki, Schwartz, Steinsapir, Dohrmann, Krepack, Sommers & Edelstein, Los Angeles, Cal., for plaintiffs-appellees.
 Gary W. Robinson, Mullen, McCaughey & Henzell, Santa Barbara, Cal., for defendant-appellant.
 Appeal from the United States District Court for the Central District of California.
 Before CHAMBERS and SNEED, Circuit Judges, and MARQUEZ,* District Judge.
 SNEED, Circuit Judge:
 
 
 1
 The Trust Funds brought two suits to recover delinquent trust fund contributions required under collective bargaining agreements signed by Bjorklund, an employer. The district court granted summary judgment in favor of the plaintiff Trust Funds in both suits and Bjorklund appealed. We affirm.
 
 I.
 FACTS
 
 2
 Bjorklund owns a small grocery in San Luis Obispo, California. He signed collective bargaining agreements with the Retail Clerks Union, Local 899 (currently known as Local 899, United Food and Commercial Workers Union) covering the periods July 28, 1975, through July 30, 1978, and July 31, 1978, through July 26, 1981. These collective bargaining agreements incorporated the terms and conditions of certain multiemployer trust agreements establishing the plaintiff-appellee Trust Funds. Thus, by signing the collective bargaining agreements, Bjorklund agreed to make pension, health, and welfare contributions to the Trust Funds based upon the number of hours his employees worked.
 
 
 3
 Bjorklund alleges that he was fraudulently induced into signing the collective bargaining agreements. He claims that Harry Warren, an officer of the union, secured his signature on the collective bargaining agreements by falsely telling him that he would be eligible for a pension under the agreement.[1] Bjorklund alleges that Warren falsely assured him that he would be required to make contributions only for himself and his only full time employee, his son. Bjorklund made contributions only for himself and his son. He made no contributions for the hours worked by his part-time employees.
 
 
 4
 The Trust Funds brought these suits under the Labor Management Relations Act (LMRA) and the Employee Retirement Income Security Act (ERISA) to collect contributions for the hours worked by these employees. The plaintiff Trust Funds moved for summary judgment. The district court initially denied this motion because it believed that there was a genuine issue of material fact concerning whether Warren was acting as an agent of the plaintiff Trust Funds when he allegedly fraudulently induced Bjorklund to enter into the collective bargaining agreement. Later, however, the district court modified its order and granted the Trust Funds' motion for summary judgment because it discovered that the issue of Warren's agency was not included in the pretrial orders in the suits. As a consequence, the court refused to consider it in ruling on the motion for summary judgment. The parties stipulated to the amount of damages and judgment was entered on behalf of the Trust Funds.
 
 
 5
 On appeal, Bjorklund advances two arguments.[2] First, he maintains that summary judgment was improper because the material issue of fact concerning whether Warren was acting as an agent of the Trust Funds had been raised. Second, he argues that even if Warren was an agent only of Local 899 and not an agent of the Trust Funds, the Trust Funds should be legally prevented from recovering because Bjorklund's signatures on the collective bargaining agreements had been fraudulently induced by Local 899.
 
 II.
 THE TRUST FUND FRAUD ISSUE
 
 6
 Bjorklund contends that summary judgment was improper because a review of the entire record in the case would have revealed several references to the issue of Warren's status as an agent of the Trust Funds. These references, Bjorklund asserts, should have indicated to the district court that he intended to show that Warren was an agent of the Trust Funds. Nonetheless, the pretrial orders do not contain even a colorable reference to this issue and Bjorklund made no request to have the orders modified.
 
 
 7
 Under Rule 16(e) of the Federal Rules of Civil Procedure, a pretrial order controls the subsequent course of the action unless modified at the trial to prevent manifest injustice. We have consistently held that issues not preserved in the pretrial order have been eliminated from the action. See United States v. Joyce, 511 F.2d 1127, 1130 n. 1 (9th Cir.1975). Thus, Bjorklund's failure to preserve the issue of whether Warren was acting as an agent of the plaintiff Trust Funds prevents him from asserting that this is a material issue of fact that precludes summary judgment. The existence of references to this issue in the record of the case compiled before the pretrial orders is irrelevant. The very purpose of the pretrial order is to narrow the scope of the suit to those issues that are actually disputed and, thus, to eliminate other would-be issues that appear in other portions of the record of the case.
 
 
 8
 Of course, Rule 16 allows district courts to modify pretrial orders "to prevent manifest injustice." Fed.R.Civ.P. 16(e). Bjorklund did not request a modification to the pretrial orders, however. He cannot now maintain that the agency issue was before the district court. See L & E Co. v. United States ex rel. Kaiser Gypsum Co., 351 F.2d 880, 882 (9th Cir.1965) (because no request for modification of the pretrial order was made, an issue that did not appear in the pretrial order was no longer an issue in the case).
 
 III.
 THE UNION FRAUD ISSUE
 
 9
 Bjorklund contends that Warren, acting as an officer of Local 899, induced him into entering the initial agreement by misrepresenting his eligibility for a pension under the agreement. The lower court held that fraud by the union, as opposed to fraud by a trust fund itself, can not serve as an affirmative defense to a trust fund collection action.
 
 
 10
 Under traditional contract law, the Trust Funds, as third party beneficiaries of the collective bargaining agreements, would be subject to any contract defenses generally available against the contracting parties themselves. But the traditional contract law does not apply in full force in suits brought under the LMRA and ERISA to collect delinquent trust fund contributions. See Chicago District Council of Carpenters Pension Fund v. Dombrowski, 545 F.Supp. 325, 326 (N.D.Ill.1982). Under Lewis v. Benedict Coal Corp., 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960), and a section of the Multiemployer Pension Plan Amendments of 1980, the range of defenses to such a suit is severely limited.
 
 
 11
 In Benedict Coal, the employer, sued by trustees for delinquent contributions, argued that the union had violated the no-strike clause of the contract that established the trust fund. The employer attempted to set off any damages caused by the strike against any delinquent contributions it owed the trust fund. The Supreme Court rejected this position by holding that the union's performance of its promises was not a condition precedent to Benedict's duty to make trust fund contributions.
 
 
 12
 Congress included a section in the Multiemployer Pension Plan Amendments Act of 1980 that was designed to further limit the defenses to an action for delinquent trust fund contributions. Section 306(a) provides:
 
 
 13
 Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
 
 
 14
 29 U.S.C. Sec. 1145 (Supp. V 1981). According to the Senate Labor Committee, this provision was introduced because "simple collection actions brought by plan trustees have been converted into lengthy, costly and complex litigation concerning claims and defenses unrelated to the employer's promise and the plans' entitlement to the contributions." Senate Committee on Labor and Human Resources, S. 1076--The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration, 96th Cong., 2d Sess., 44 (Comm.Print, Apr. 1980).
 
 
 15
 In Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982), this section of the 1980 legislation came before the Supreme Court. The defendant employer claimed that its promise to make certain trust fund contributions was illegal. The collective bargaining agreement at issue included a clause requiring the employer to make contributions based on each ton of coal it produced and each hour worked by employees. It also required contributions based on each ton of coal purchased by the employer from a non-union operator who did not make contributions based on coal production. The employer claimed that the latter provision was unenforceable because it violated Sections 1 and 2 of the Sherman Act and Section 8(e) of the National Labor Relations Act (prohibiting "hot cargo" clauses whereby an employer agrees not to do business with another, presumably nonunion, employer). The Supreme Court held that this was a proper defense. Thus, an employer can successfully defend a suit for delinquent contributions by showing that the promise to make contributions was itself illegal. Id. at 88, 102 S.Ct. at 862.
 
 
 16
 Under Benedict Coal, the 1980 statute, and Kaiser Steel, a defense is properly allowable when it relates to a promise to make contributions that is illegal. Bjorklund does not assert that his promise to make contributions is illegal. Rather, he claims that this promise was fraudulently induced. We hold this defense is not a legitimate defense to the Trust Funds' suit for delinquent contributions. Therefore, summary judgment was properly entered on behalf of the plaintiff Trust Funds.
 
 AFFIRMED.[3]
 
 
 *
 Honorable Alfredo Marquez, United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 Bjorklund was not eligible for a pension under the terms of the collective bargaining agreement because he was an employer. Nonetheless, he erroneously made contributions for himself for several years. Bjorklund secured a judgment against Local 899 in a California suit based upon Warren's fraud in inducing the signing of the collective bargaining agreement. Damages were awarded in the amount that Bjorklund's pension would have been worth if he had been eligible for it. Bjorklund v. Retail Clerks Union, Local 899, No. 112899 (Cal.Super.Ct. for Santa Barbara County July 15, 1980)
 
 
 [2]
 Bjorklund also raises a third argument. He contends that the collective bargaining agreements are illegal under the federal labor laws (and therefore unenforceable) because they were entered into with a minority union. As Bjorklund readily admits, however, we have held that an employer is barred from raising a minority union defense to a suit brought under the LMRA. See Glaziers & Glassworkers Local Union # 767 v. Custom Auto Glass Distributors, 689 F.2d 1339 (9th Cir.1982)
 
 
 [3]
 The Trust Funds are entitled to reasonable attorneys' fees arising from the defense of this appeal. See 29 U.S.C. Sec. 1132(g)(2)(D) (Supp. V 1981) (successful trustee plaintiffs are automatically entitled to attorneys' fees). Cf. Shelter Framing Corp. v. Pension Benefit Guaranty Corp., 705 F.2d 1502, 1515 (9th Cir.1983) (under another ERISA attorneys' fees provision, parties' attorneys' fees award includes award for attorneys' fees on appeal)