**SOUTHWEST ADMINISTRATORS, INC., Plaintiff/Appellee,**

v.

**ROZAY'S TRANSFER, a California corporation, Defendant/Appellant.**

Nos. 84–5689, 85–6020.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 1986.

Decided June 10, 1986.

As Amended on Denial of Rehearing and Rehearing En Banc Aug. 28, 1986.

James Oswald, Davies, Roberts, Reid & Wacker, Seattle, Wash., for plaintiff/appellee.

Stephen P. Pepe, O'Melveny & Myers, Peter Marx, Los Angeles, Cal., for defendant/appellant.

Before WALLACE, PREGERSON, and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Southwest Administrators, Inc., an employee benefit trust fund administrator, brought this action against Rozay's Transfer, an employer, to recover allegedly delinquent trust fund contributions. Rozay's Transfer contends Teamsters Local 208 fraudulently induced it to execute the underlying collective bargaining agreement and thus Rozay's Transfer has no obligation to pay retroactive contributions. The district court concluded that sections 502(a) and 515 of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1132(a), 1145, do not permit such a defense to nonpayment. We affirm.

## I

## BACKGROUND

Prior to September 30, 1981, Rozay's Transfer, an employer in the trucking industry, and Teamsters Local 208 were parties to a collective bargaining agreement. Pursuant to the agreement, Rozay's Transfer made monthly contributions on behalf of its employees to the Western Conference of Teamsters Pension Trust Fund. This trust fund is a multiemployer pension plan as defined by subsections 3(2) and (37)(A) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(2), (37)(A).

After the agreement had expired, and while negotiations were continuing over the terms of a successor agreement, Rozay's Transfer continued to make contributions to the trust fund pursuant to the terms of the 1978–81 bargaining agreement. In July, 1982, when no successor agreement had yet been adopted, Rozay's Transfer informed the union that it had ceased making contributions to the pension fund.

In September, 1982, Local 208 filed an unfair labor practice claim with the National Labor Relations Board (NLRB) charging Rozay's Transfer under 29 U.S.C. § 158(a)(5) with refusal to execute a collective bargaining agreement that had allegedly been negotiated. The NLRB charge was subsequently amended to include the charge that Rozay's Transfer had unilaterally altered benefits and conditions of employment, including cessation of payments to the pension fund. Local 208 also filed a grievance alleging the cessation of contributions to the trust fund violated the collective bargaining agreement.

While the NLRB charge and the grievance were pending, William S. Rozay, the owner of Rozay's Transfer, and Archie Murrietta, president of Local 208, eventually reached a settlement. Under this settlement, employee wages would be reduced by $1.00 and Rozay's Transfer would resume payments to the trust fund on behalf of each employee at the approximate rate of $.99 per hour.

In light of the company's precarious financial position, Rozay expressed serious concerns about being required to make retroactive pension fund contributions for the period between May, 1982 and February, 1983. Murrietta, and Maurice E. Anderson, the director of the Western Conference of Teamsters, agreed to contact the trust fund and request a waiver of the obligation to make contributions for this period.[1] Murrietta and Anderson assured

---

1. Apparently the parties believed it was not possible simply to draft a collective bargaining agreement providing for prospective-only payment of contributions to the pension fund. It was the established policy of the Western Conference of Teamsters Pension Trust Fund not to accept contributions made under any collective bargaining agreement which provided for a "gap" in contributions. Thus, when a collective bargaining agreement expired, in order for the

Rozay that the delinquent payments would be forgiven, noting that the trust fund had waived the unpaid pension contributions of other employers under similar circumstances.

Murrietta wrote to the trust fund on behalf of Rozay's Transfer requesting relief from payment of contributions for this interim period. However, on February 16, 1983, the trustees of the Western Conference of Teamsters Pension Fund, voted to deny the request to forgive the unpaid contributions.

When the new collective bargaining agreement was executed on March 8, 1983, Murrietta had been informed of the trust fund's decision to deny a waiver of the delinquent contributions. He did not advise Rozay of this action. Rozay, assuming that unpaid contributions would be forgiven, signed the agreement, which covered the period from September 1, 1981 to September 30, 1984. The parties also executed a settlement agreement resolving the NLRB unfair practice complaint and the breach of agreement grievance. Local 208 thereafter withdrew the NLRB unfair labor practice charge and the grievance.

Subsequently, Southwest Administrators, Inc., the assignee of the Western Conference of Teamsters Pension Trust Fund, filed this action against Rozay's Transfer under sections 502(a) and 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(a), 1145, to collect delinquent contributions for the period between May, 1982 and February, 1983.

Rozay's Transfer contended that its obligation to make pension fund contributions dated only from March 8, 1983, when the collective bargaining agreement was signed. Rozay's Transfer also filed a counterclaim seeking the return of $57,235.28 in contributions made to the trust between October, 1981 and April, 1982, the period between expiration of the old bargaining agreement and the date Rozay's Transfer ceased making payments.

The district court denied cross-motions for summary judgment on Southwest Administrators' complaint to collect delinquent contributions. However, the court did grant summary judgment against Rozay's Transfer on the counter-claim to recover contributions paid after the expiration of the old agreement.[2]

After a one day bench trial, the district court held that the trust fund's right to enforce the express terms of the collective bargaining agreement, requiring pension fund contributions for the contested period, was not impaired by the union official's oral misrepresentations. The district court did find that Rozay had been "fraudulently induced" by Murrietta to sign the collective bargaining agreement, and that there had been no "meeting of the minds" on the issue of the retroactive pension fund contributions. However, as the fraud was not committed by the trust fund, the court held it was not precluded from enforcing Rozay's Transfer's obligation to make contributions as required by the express terms of the bargaining agreement.

The district court entered judgment for Southwest Administrators in the amounts of $76,133.29 in retroactive pension fund contributions, $15,226.25 in liquidated damages, $25,039.09 in interest, and $6,390.00 in attorneys fees.

## II

### STANDARD OF REVIEW

We accept the district court's findings of fact because they are not clearly errone-

---

employer to be reinstated in the trust fund, the new agreement had to provide for the payment of contributions for the interim between the two agreements.

However, Murrietta and Anderson represented to Rozay that it was possible on an individual case-by-case basis for the trust fund to grant an employer relief from making up the delinquent payments.

2. Rozay's Transfer's appeal from that summary judgment was stayed by this court pending final judgment by the district court on the primary claim in the case. That appeal has now been consolidated with Rozay's Transfer's appeal from final judgment in favor of Southwest Administrators in the collection action.

ous. *See Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1501, 1502 (9th Cir.1984).

■ Whether certain contract defenses are available in an action to recover delinquent trust fund contributions is a question of law. We review de novo a district court's conclusions of law. *Maxwell v. Lucky Construction Co., Inc.*, 710 F.2d 1395, 1397 (9th Cir.1983).

### III

### AVAILABILITY OF CONTRACT DEFENSES IN PENSION FUND COLLECTION ACTION

■ For an employer to be obligated to make employee benefit contributions to a trust fund, there must exist a binding collective bargaining agreement. *See Carpenters Southern California Administrative Corp. v. Russell*, 726 F.2d 1410, 1413 (9th Cir.1984). Rozay's Transfer contends that its bargaining agreement is invalid, because it was the product of fraudulent inducement.

■ In an action to recover delinquent contributions, the trust fund stands in the position of a third-party beneficiary of the collective bargaining agreement. A third-party beneficiary's rights are generally subject to any contract defense which the promisor could assert against the promisee if the promisee were suing on the contract. J. Calamari & J. Perillo, *The Law of Contracts* § 17–8, at 623–24 (2d ed. 1977).

■ However, a collective bargaining agreement is not a typical third-party beneficiary contract. *See Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 468, 80 S.Ct. 489, 494–95, 4 L.Ed.2d 442 (1960). For reasons of public policy, traditional contract law does not apply with full force in actions brought under the Employee Retirement Income Security Act (ERISA) to collect delinquent trust fund contributions. *Southern California Retail Clerks Union and Food Employers Joint Pension Trust Fund v. Bjorklund*, 728 F.2d 1262, 1265 (9th Cir.1984) (*"Bjorklund"*).

In recognition of the fact that millions of workers depend upon employee benefit trust funds for their retirement security, Congress and the courts have acted to simplify trust fund collection actions by restricting the availability of contract defenses, which make collection actions unnecessarily cumbersome and costly. Comment, *Denying the Illegality Defense: An Enigmatic Approach to the Delinquent Pension Fund Contribution Problem*, 34 Stan.L.Rev. 221, 228 (1981); *see, e.g., Lewis v. Benedict Coal Corp.*, 361 U.S. at 468–71, 80 S.Ct. at 494–96 (precluding the employer from raising a union's strike in violation of the bargaining agreement as a defense to a trust fund collection action based on the same agreement).

In 1980, Congress amended ERISA by adding section 306(a), 29 U.S.C. § 1145, to limit further the range of defenses available in an action for delinquent trust fund contributions. *Bjorklund*, 728 F.2d at 1265. Section 306(a) provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

In two recent cases, we have had occasion to consider the availability of fraud as a defense to an employer's obligation to make trust fund contributions under a collective bargaining agreement. These two decisions arrived at opposite results based upon the different types of fraud involved.

In *Bjorklund*, an employer signed a collective bargaining agreement relying upon the union representative's false assurance that the employer himself would be eligible to obtain a pension and that he would not be required to make contributions for his part-time employees. 728 F.2d at 1263–64, 1265. We held that the employer's assertion that he had been "fraudulently induced" to enter into the agreement was not a legitimate defense to the trust fund's collection action. *Id.* at 1266.

In *Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1501, 1503 (9th Cir.

1984) ("*Gilliam*"), an employer signed a collective bargaining agreement under the impression that he was only applying to become a member of the union as an owner-operator so that he could operate his own equipment on a union job site. When the trust fund brought an action to collect pension fund contributions owing under the agreement, we held he was not obligated to make such payments as he had reasonably relied on the union's representation that he was signing a document of a wholly different nature. *Id.* at 1504–05.

■ The distinction between the types of misrepresentation presented in *Bjorklund* on the one hand and *Gilliam* on the other is the distinction between "fraud in the inducement" and "fraud in the execution" (or "fraud in factum"). The former induces a party to assent to something he otherwise would not have; the latter induces a party to believe the nature of his act is something entirely different than it actually is. *See* 12 *Williston on Contracts* § 1488, at 332 (3d ed. 1970). "Fraud in the execution" arises when a party executes an agreement "with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." Uniform Commercial Code § 3–305(2)(c); *see* Restatement (Second) of Contracts § 163 (1981).

■ This distinction between these two types of fraud may be very significant in determining the rights obtained by third parties as a result of an agreement. Under traditional contract law and negotiable instruments law, personal property or a negotiable instrument transferred by virtue of a misrepresentation may subsequently be transferred to a bona fide purchaser for value or a holder in due course—innocent third parties who take in good faith and without notice of any defects in the chain of ownership. The defrauded party may recover the property from the bona fide purchaser or avoid honoring the negotiable instrument held by the holder in due course only if the initial transaction was "void" rather than merely "voidable." *See* J. Calamari & J. Perillo, *Contracts* § 9–22, at 293; J. White & R. Summers, *Uniform*

*Commercial Code* § 14–9, at 572–75 (2d ed. 1980). Fraud in the execution results in the agreement being void *ab initio*, whereas fraud in the inducement makes the transaction merely voidable. *See* 12 *Williston on Contracts* § 1489, at 341–42.

The district court expressly found that Rozay's Transfer had been "fraudulently induced" into executing the collective bargaining agreement and cited *Bjorklund* for the proposition that such fraudulent inducement cannot be maintained as a defense in a trust fund collection action.

Indeed, the situation in *Bjorklund* was quite similar to that presented in the instant case. In *Bjorklund*, the employer entered into the bargaining agreement upon the assumption that he would be making pension fund contributions only for himself and his one full-time employee, his son. 728 F.2d at 1263–64. Instead, the employer discovered that he was ineligible for a pension and, in addition, was required to make contributions on behalf of his part-time employees. *Id.* As in the instant case, the fraudulent misrepresentation in *Bjorklund* went directly to the employer's central motivation for entering into the agreement. Yet we held that such fraudulent inducement was not the type of defense that could be maintained against a trust fund's collection action.

Rozay's Transfer cannot persuasively contend that fraud in the execution is presented on the facts of this case. Rozay acknowledged at trial that he was fully aware that the document he signed was a collective bargaining agreement and that the agreement was effective as of September 30, 1981, thus obligating the payment of contributions to the trust fund for the disputed period.

To maintain a defense of fraud in the execution, Rozay's Transfer would have to establish "excusable ignorance of the contents of the writing signed." *See* Uniform Commercial Code § 3–305 comment 7. But there simply was no confusion as to the actual contents of the agreement. Instead the misrepresentation concerned whether the express provisions of the agreement would in fact be enforced—an example of

fraud in the inducement, as the district court found.

■ Nor does the district court's finding that there was no "meeting of the minds" concerning the retroactive payment of trust fund contributions provide a legitimate defense to the collection action. Under the facts of this case, the argument that there was no "meeting of the minds" is little more than a restatement of the fraudulent inducement defense. Both stem from the union's oral misrepresentation as to the effect of the bargaining agreement. Rozay's Transfer argues that there was no "meeting of the minds" because Rozay would not have signed the agreement had he known he would be obligated to make retroactive contributions as required under the express terms of the agreement. However, this is simply another way of saying that the union fraudulently induced Rozay to enter the contract. Indeed, the defense of fraudulent inducement indicates there has been no proper manifestation of mutual assent. *See* 1 *Williston on Contracts* § 20, at 36 (3d ed. 1957).

In sum, the misrepresentation by the union went to Rozay's inducement to enter the agreement, rather than to his understanding of the basic nature of the transaction. Consequently, the bargaining agreement was not "void," but merely "voidable." The claim that a promise to make contributions was fraudulently induced is not a legitimate defense to the trust fund's action to recover delinquent contributions.[3] *Bjorklund,* 728 F.2d at 1266.

## IV

## ACCORD AND SATISFACTION DEFENSE

Rozay's Transfer characterizes the settlement agreement executed simultaneously with the collective bargaining agreement as an "accord and satisfaction" to resolve the dispute over unpaid contributions. Thus, Rozay's Transfer argues, the settlement agreement bars the trust fund's claim for delinquent contributions.

When Rozay's Transfer ceased making contributions sometime after the expiration of the old bargaining agreement, Local 208 filed an unfair labor practice charge with the NLRB and brought a grievance alleging that the failure to continue making contributions constituted a breach of the expired bargaining agreement. The settlement agreement executed by Rozay's Transfer and Local 208 states that it resolves all disputes between the parties arising out of the alleged unfair labor practice and provides that the grievance would be withdrawn.

However, the settlement agreement makes no reference to trust fund contributions, while the renewed collective bargaining agreement executed simultaneously expressly provides for contributions to the trust fund effective as of September, 1981, thereby covering the disputed period between May, 1982 and February, 1983.

Rozay's Transfer urges us to read the settlement agreement as addressing the delinquent contributions dispute implicitly

---

**3.** Our decision also comports with the decision in *Waggoner v. Dallaire,* 649 F.2d 1362 (9th Cir.1981), *later appeal,* 767 F.2d 589 (9th Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1374, 89 L.Ed.2d 601 (1986). In *Waggoner,* an employer was fraudulently induced to enter a bargaining agreement by the union's oral representation that the trust fund contributions of the agreement would not be enforced. We held that the express terms of the agreement were to be enforced in favor of the trust fund because oral modification of the employee benefit provisions was forbidden by section 302 of the Labor Management Relations Act, 29 U.S.C. § 186. *Id.* at 1366. *See also Operating Engineers Pension Trust v. Giorgi,* 788 F.2d 620, 623 (9th Cir.1986).

To inhibit corrupt practices between employers and unions, section 302(c)(5) requires that

payments from an employer to an employee benefit trust fund be made pursuant to a detailed written agreement. *Maxwell v. Lucky Construction Co., Inc.,* 710 F.2d 1395, 1397–98 (9th Cir.1983). If oral modifications to the express terms of the agreement by the employer and union were permitted, "[e]mployees, basing their futures on the promise of an old-age pension provided in a union contract, may discover in later years to their surprise that an oral side-agreement had eroded the worth of their pension rights." *Waggoner,* 649 F.2d at 1366. Accordingly, the unambiguous terms of a collective bargaining agreement providing for employee benefit contributions should prevail in all but the most compelling of circumstances.

through its very silence. However, such a reading provides, at most, that Rozay's Transfer would not be required to pay the delinquent contributions as part of the resolution of the unfair labor practice charge and the grievance. The independent force of the separately adopted collective bargaining agreement still requires Rozay's Transfer to pay the delinquent contributions.

■ Although the settlement agreement amends the new collective bargaining agreement with respect to certain provisions concerning wages, holiday pay, and sick leave, it leaves the pension fund contribution provisions unaltered. Consequently, the express written terms of the bargaining agreement, providing for full pension fund contributions for the disputed period, must be enforced, notwithstanding any oral understandings to the contrary.

## V

### COUNTERCLAIM TO RECOVER PREVIOUS TRUST FUND CONTRIBUTIONS

Rozay's Transfer filed a counterclaim seeking the refund of $57,235.38 in contributions made to the trust fund between October, 1981 and April, 1982, after the old collective bargaining agreement had expired and before the new agreement was executed. Rozay's Transfer contended that because such contributions were made during a period when no written agreement was in effect between it and Local 208, the trust fund had no right to accept the contributions under its own rules and under section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The district court granted summary judgment against Rozay's Transfer on this counterclaim.

As section 403(c)(2)(A)(ii) of ERISA, 29 U.S.C. § 1103(c)(2)(A)(ii), expressly permits trust funds to return mistakenly paid contributions, we have held it is appropriate to imply a right of action under ERISA in favor of employers to recover contributions mistakenly paid into a pension trust fund. *Award Service, Inc. v. Northern Califor-*

*nia Retail Clerks Union and Food Employers Joint Pension Trust Fund,* 774 F.2d 1391, 1392 (9th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 850, 88 L.Ed.2d 890 (1986); *see generally* Note, *An Employer's Implied Cause of Action for Restitution Under Section 403 of ERISA,* 54 Fordham L.Rev. 225 (1985).

■ However, even after the expiration of the bargaining agreement, Rozay's Transfer was obligated to continue to make contributions to the employee benefit trust fund. Under section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5), it is an unfair labor practice for an employer to change unilaterally the conditions and benefits of employment while negotiations for a new bargaining agreement are pending. *See generally Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co., Inc.,* 779 F.2d 497 (9th Cir.1985). This obligation to maintain the status quo during continuing negotiations "encompasses the obligation to continue making pension fund contributions." *Producers Dairy Delivery Co., Inc., v. Western Conference of Teamsters Pension Trust Fund,* 654 F.2d 625, 627 (9th Cir.1981). The employer must maintain the benefits and conditions of employment under the expired agreement until the parties negotiate a new agreement or bargain in good faith to impasse. *Laborers Health and Welfare Trust Fund,* 779 F.2d at 500 & n. 3; *American Distributing Co., Inc. v. NLRB,* 715 F.2d 446, 449 (9th Cir.1983), *cert. denied,* 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984). Rozay's Transfer has not alleged that an impasse was reached in its negotiations with Local 208.

Rozay's Transfer contends that the trust fund's own rules forbade acceptance of contributions made after the expiration of the collective bargaining agreement. In support of this argument, Rozay's Transfer presents excerpts from letters written by the trust. However, the full text of those letters indicates that the trust was merely summarizing federal law which requires contributions to be made while a current bargaining agreement is in effect or while negotiations are pending:

As you are aware, the Trust cannot accept pension contributions unless there is a written labor agreement and Employer-Union Pension Certification in effect requiring such contributions or unless negotiations for a new agreement are pending. If you are presently in negotiations, operating under a continuation clause, or the renewed contract is being printed, etc., please advise our office accordingly so that we may continue to accept contributions.

Accordingly, Rozay's Transfer was fully obligated to make pension fund contributions during this period. Its contributions were not made mistakenly. Moreover, even if the obligation to make those contributions had not existed before, Rozay's Transfer affirmed that obligation by executing the renewed collective bargaining agreement which mandated contributions to the trust fund retroactive to September 30, 1981.

## VI

### DENIAL OF LEAVE TO IMPLEAD UNION AS THIRD-PARTY DEFENDANT

The district court denied Rozay's Transfer's motion for leave to file a third-party complaint against Local 208 for rescission of the collective bargaining agreement or, in the alternative, for indemnification and for fraud.

Federal Rule of Civil Procedure 14(a) provides that a defending party may implead a third party "who is or may be liable to him for all or part of the plaintiff's claim against him." The purpose of this rule is to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third individual who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim. 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1442, at 202–03 (1971).

■■■ If the third-party complaint is not filed within ten days after the defendant's original answer is served, then, as in the instant case, the defendant must ask the trial court for leave to implead. The decision whether to implead a third-party defendant is addressed to the sound discretion of the trial court. *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir.1983), *cert. denied*, 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984); *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*, 605 F.2d 1228, 1247 (2nd Cir.1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980); 6 C. Wright & A. Miller, *supra* § 1443, at 208.

■■■ It is not an abuse of discretion to deny an application for impleader where it will disadvantage the existing action. 6 C. Wright & A. Miller, *supra* § 1443, at 210. The district court reasonably concluded that impleading the union would be inconsistent with the purposes of ERISA in providing a streamlined and simplified procedure for employee benefit trust funds to collect delinquent contributions. To have granted the impleader might well have complicated and lengthened the trial, and would have introduced the extraneous question of remedies in the third-party action, such as whether the collective bargaining agreement should be rescinded by reason of the union's allegedly fraudulent conduct.[4]

**4.** Subsequent to the entry of judgment by the district court in this trust fund collection action, Rozay's Transfer initiated a separate action against Local 208 alleging fraudulent misrepresentation. On July 2, 1986, the district court entered judgment in favor of Rozay's Transfer granting rescission of the collective bargaining agreement and awarding indemnification from Local 208 for contributions owing to the trust fund as a result of the union's fraudulent misconduct. *Rozay's Transfer v. Local Freight Drivers, Local 208*, No. CV 84–8313 MRP (Bx) (C.D.Cal. July 2, 1986).

This subsequent judgment in the related case does not affect our conclusion in the instant case. Rozay's Transfer remains obligated as a result of this action to pay delinquent contributions to the trust fund under § 515 of ERISA, 29 U.S.C. § 1145. However, Rozay's Transfer may now be entitled to indemnification for liability incurred as a result of this collection action appeal.

## VII

### ATTORNEYS' FEES ON APPEAL

Under ERISA, the award of attorneys' fees is mandatory in all actions by an employee benefit trust fund to collect delinquent contributions. 29 U.S.C. § 1132(g)(2)(D); *Lads Trucking Co. v. Board of Trustees of the Western Conference of Teamsters Pension Trust Fund*, 777 F.2d 1371, 1373 (9th Cir.1985); *Operating Engineers Pension Trust v. Reed*, 726 F.2d 518, 514 (9th Cir.1984).[5] This mandate includes the recovery of attorneys' fees incurred on appeal. *See Carpenters Southern California Administrative Corp. v. Russell*, 726 F.2d 1410, 1417 (9th Cir.1984).

As the prevailing party in this appeal, Southwest Administrators, Inc., as assignee of the trust fund, is entitled to a reasonable attorneys' fee. After the mandate issues, the district court will assess a reasonable attorneys' fee for this appeal.

AFFIRMED.

---

5. Section 1132(g)(2) provides that:
   In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
   . . . .

   (D) reasonable attorney's fees and costs of the action, to be paid by the defendant. . . .
   29 U.S.C. § 1132(g)(2).