675 F.Supp. 1083 (1987)
BRICKLAYERS' PENSION TRUST FUNDMETROPOLITAN AREA; Bricklayers Holiday Trust Fund  Metropolitan Area; Detroit and Vicinity Trowel Trades Health and Welfare Fund; Bricklayers' Joint Apprenticeship Committee; and Bricklayers' Labor-Management Corporation Committee, Plaintiffs,
v.
Gaetano CHIRCO, individually and d/b/a Guy's Mason Company a/k/a Guy's Masonry and G & V Construction Company, Defendant.
Civ. No. 86 73500.
United States District Court, E.D. Michigan, S.D.
December 23, 1987.
Mark Granzotto, Detroit, Mich., for plaintiffs.
Martin E. Crandall, Detroit, Mich., for defendant.

MEMORANDUM OPINION AND ORDER
ANNA DIGGS TAYLOR, District Judge.
This action, which was tried before the Court without a jury, is to collect fringe benefit fund contributions allegedly due pursuant to the terms of a collective bargaining agreement between Gaetano Chirco and the Bricklayers' Union.

FINDINGS OF FACT
Defendant Gaetano Chirco came to the United States from Italy in 1967. He became a naturalized American citizen within two years thereafter, and has functioned as a businessman in this community 14 years, but claims an inability to read or write English. Defendant's wife, Maria Chirco, also is Italian. She is proficient in the English language.
Since 1968, Defendant has been a bricklayer in the Detroit metropolitan area and has owned several companies which do business in the building construction industry. The principal place of business for all of his endeavors has been Southgate, Michigan. Mrs. Chirco is the bookkeeper for the masonry firms Defendant has owned or operated. Her duties include writing checks and performing any other duties that Defendant cannot handle because of his language problem.
Mr. Chirco has signed collective bargaining agreements (known as "Red Book Agreements") with the International Union of Bricklayers and Allied Craftsmen, AFL-CIO ("Bricklayers' Union") on behalf of two business entities. They are: (1) Amici's Mason Construction Company for the period from July 1, 1972 through June 30, 1974, and July 1, 1974 through June 30, 1977; and (2) Guy's Mason Company (a/k/a *1084 Guy's Masonry) covering the period July 1, 1977 through May 31, 1980. By signing these agreement booklets, Defendant undisputedly agreed to and did, in fact, make pension, health and welfare contributions to Plaintiff Trust Funds based upon the number of hours his employees performed contract work.
In 1983, however, Defendant Chirco began work on a bricklaying job in Taylor, Michigan. Defendant and Vincent Vitale, a partner in Guy's Masonry, were the sole bricklayers; a laborer also was employed on a part-time basis.
A business agent for Local 35 of the Bricklayers' Union, Carlo Martina, visited the Taylor job site and provided Defendant with a collective bargaining agreement booklet for his review and signature, for the period June 1, 1982 through May 31, 1986. This agreement, or "Red Book," as did the previous agreements signed by Defendant, provided for fringe benefit contributions on behalf of Defendant's employees. Approximately two weeks later, Martina returned to the site and collected the agreement signed by Defendant on behalf of Guy's Masonry. At the same time, Martina received a $100.00 check designated as "union dues" for both Defendant and his partner, Vitale.
Defendant alleges that he was fraudulently induced into signing the 1982-1986 collective bargaining agreement. Specifically, Defendant claims that union officer Carlo Martina falsely represented to Chirco that he must simply join the union in order to perform the bricklaying job in Taylor, and that a signature of the Red Book was needed for membership. Defendant was under the impression that he was merely signing the agreement to become a union member, and not as an employer accepting a collective bargaining agreement. He testified that he could neither read nor comprehend the significance of the Red Book, on this occasion.
On August 21, 1986, Plaintiffs filed suit under the Labor-Management Relations Act ("LMRA") and the Employment Retirement Income Security Act ("ERISA") to collect fringe benefit contributions due and owing from January 1983 to the present. Defendant's answer thereto affirmatively denied the existence of a valid collective bargaining agreement between the parties obligating Defendant to make any such contributions. The same defense was raised in response to Plaintiffs' motion to compel production of documents necessary for their audit. The hearing on Plaintiffs' motion was adjourned pending discovery on the issue of Defendant's contractual liability.
To determine the truth of Defendant's assertion that no collective bargaining agreement existed in this case, Plaintiffs conducted the deposition of Defendant, Gaetano Chirco, on January 21, 1987. During the course of that deposition, Defendant was shown the 1982-1986 collective bargaining agreement with the Bricklayers' union and conceded that the signature on page 36 of that agreement was his own.
On May 21, 1987, Plaintiffs filed a motion for partial summary judgment on the contractual liability issue raised in the complaint. This Court heard oral argument on August 10, 1987 and denied the motion, holding there was a genuine issue of material fact whether Defendant was told to sign the collective bargaining agreement in order to join the union, and thereby victimized by the Union agent. The case proceeded to a one-day bench trial on September 22, 1987 to determine Defendant's contractual liability to Plaintiffs, if any, for the delinquent fringe benefit contributions.

CONCLUSIONS OF LAW
Defendant Chirco is obligated to make fringe benefit contributions only if he is a party to a binding collective bargaining agreement with the Bricklayers' Union. See Carpenters S. Calif. Admin. Corp. v. Russell, 726 F.2d 1410, 1413 (9th Cir.1984). Surrounding circumstances and the intentions of the parties are relevant in determining if a binding agreement exists. United Steelworkers v. Bell Foundry, 626 F.2d 139, 141 (9th Cir.1980).
Plaintiffs' standing to maintain this action to recover delinquent contributions is derived from the Trust Funds' status as a third-party beneficiary of the collective bargaining *1085 agreement between Defendant and the union. Under traditional contract law, a third-party beneficiary is subject to any contract defenses generally available against the contracting parties themselves. J. Calamari & J. Perillo, The Law of Contracts § 17-8, at 623-24 (2d ed. 1977). A collective bargaining agreement, however, is not a typical third-party beneficiary contract. Accordingly, "traditional contract law does not apply in full force in suits brought under the LMRA and ERISA to collect delinquent trust fund contributions." Southern California Retail Clerks Union and Food Employers Joint Pension Trust Fund v. Bjorklund, 728 F.2d 1262, 1265 (9th Cir.1984), citing Chicago Dist. Council of Carpenters Pension Fund v. Dombrowski, 545 F.Supp. 325, 326 (N.D.Ill.1982).
For the reasons set forth below, this Court finds that Defendant is a party to an enforceable collective bargaining agreement with the Bricklayers' Union and is obligated to pay delinquent fringe benefit contributions thereunder.
Both parties agree that the following trilogy of Ninth Circuit cases should govern disposition of the instant case.
In Southern California Retail Clerks Union and Food Employers Joint Pension Trust Fund v. Bjorklund, 728 F.2d 1262 (9th Cir.1983), an employer signed a collective bargaining agreement relying upon the union representative's false assurance that the employer would be eligible for a pension under the agreement and would not be required to make contributions for his part-time employees. The Ninth Circuit affirmed summary judgment for the trust fund holding, among other things, that the union's alleged false representation was not a valid defense to suits brought to collect delinquent trust fund contributions. Id. at 1265.
In Operating Engineers Pension Trust v. Gilliam, 737 F.2d 1501 (9th Cir.1984), the defendant employer signed, at places indicated by the union's business agent, various standard form documents, including a short-form bargaining agreement and a written acknowledgement of trust agreements incorporated by the short-form agreement. He did not read the documents and, relying upon the agent's representations, thought he was applying to become a union member as an owner-operator so he could operate his equipment on a union job site. The employer was only given copies of the trust agreements. Except for a $120.00 partial payment towards his union membership fees, he made no further payments to the union or to the trust fund. Four years later, the trust fund brought suit under the LMRA and ERISA to collect in excess of $365,000 in fringe benefit contributions which the defendant refused to pay.
On appeal, the Ninth Circuit held that the employer's unknowing signing of a short-form agreement did not create a binding collective bargaining agreement obligating such payments when the employer reasonably relied upon the union's representation that he was signing a document for union membership only. Id. at 1504-05. Judgment and an award of attorneys fees for the defendant was affirmed.
The foregoing cases were harmonized in a third case: Southwest Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769 (9th Cir.1986). In that case, the defendant employer and the union were signatories to a collective bargaining agreement. After expiration of the agreement, the employer continued to make trust fund contributions; said contributions ceased when no successor agreement was adopted. The union filed both an unfair labor practice claim with the National Labor Relations Board and a grievance. Thereafter, the parties reached a settlement and a new collective bargaining agreement was signed based upon assurances by the union's local president and a director of the Teamsters that the trust funds would waive the delinquent contributions which accrued during the nine-month period when no agreement was in effect. Prior to execution of the new agreement, the union president was informed of the trust fund's denial of the employer's waiver request yet failed to inform the employer of same. The trust *1086 fund sued to collect the delinquent contributions.
Judgment for the trust fund was affirmed on appeal on the grounds that a union's fraudulent inducement with respect to execution of a collective bargaining agreement was not a valid defense to a trust fund collection action. 791 F.2d at 774. In resolving the appeal, the court distinguished Ninth Circuit precedent as follows:
The distinction between the types of misrepresentations presented in Bjorklund on the one hand and Gilliam on the other is the distinction between "fraud in the inducement" and "fraud in the execution" (or "fraud in factum"). The former induces a party to assent to something he otherwise would not have; the latter induces a party to believe the nature of his act is something entirely different than it actually is. See 12 Williston on Contracts § 1488, at 332 (3d ed. 1970). "Fraud in the execution" arises when a party executes an agreement "with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." Uniform Commercial Code § 3-305(2)(c); see Restatement (Second) of Contracts § 163 (1981).
* * * * * *
Fraud in the execution results in the agreement being void ab initio, whereas fraud in the inducement makes the transaction merely voidable. See 12 Williston on Contracts § 1489, at 341-42.
Id.
In the instant case, defense counsel asserts that a valid defense of "fraud in the execution" has been established under Gilliam. Defendant Chirco testified both at deposition and at trial that he thought he was signing the collective bargaining agreement merely to become a union member. Defendant's intent not to be bound by the agreement is said to be evident from the following "surrounding circumstances": (1) Carlo Martina, the union's business agent, handed Defendant the collective bargaining agreement and represented to Defendant that he must join the union in order to perform the bricklaying job in Taylor, Michigan; (2) when Martina returned to pick up the signed agreement, Defendant paid "union dues" in the amount of $100.00 for himself and his partner, Vitale; (3) Defendant is unable to read or write English; and (4) Defendant concedes he signed his name on page 36 of the agreement but asserts the union made three unilateral additions thereto.
Contrary to Defendant's assertion, this Court finds there is no evidence whatsoever to support a defense based on "fraud in the execution" under the circumstances of this case.
Defendant testified that Martina represented the collective bargaining agreement must be signed in order for Defendant to join the union and to perform the bricklaying job in Taylor, Michigan. Martina, who knew Defendant before 1983 through church functions and in connection with other jobs, denied this allegation. Instead, Martina stated he arrived at the Taylor job site and asked Defendant if he had a "union contract". When Defendant responded he did not, Martina provided him with two copies of the 1982-1986 collective bargaining agreement for his review and signature. One copy was to be returned to the union; the second copy was to be retained for Defendant's personal records. Martina further testified that he had no problems communicating with Defendant in English.
This Court concludes that Martina's testimony was by far more credible than Defendant's. Martina, unlike the union business agent in Gilliam, made no misstatement or misrepresentation with respect to the type of document Defendant was signing and the obligations that arose thereunder.
Defendant Chirco's previous association with the Bricklayers' Union renders his misrepresentation claim completely incredible. Plaintiffs' Exhibit 8 is Defendant's dues payment record for 1968-1972 which is maintained in the regular course of business by Local 2 of the union. Plaintiffs' Exhibit 9 is Defendant's 1979-1981 dues payment record with Local 35. The fact that Martina collected $100.00 "union *1087 dues" at the same time he picked up the signed collective bargaining agreement is nothing more than mere coincidence and is not evidence that Martina induced Defendant to sign the agreement as merely a formality for union membership. As a matter of law, "fraud in the inducement" is not a valid defense to a trust fund collection action. See Bjorklund, 728 F.2d 1262, 1265; Rozay's Transfer, 791 F.2d 769, 774.
To maintain a defense of "fraud in the execution", Defendant Chirco must establish that he executed the collective bargaining agreement "`with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.'" Rozay's Transfer, 791 F.2d at 774, quoting U.C.C. § 3-305(2)(c). Defendant must demonstrate "excusable ignorance of the contents of the writing signed." Id. U.C.C. Comment 7.
Even if this Court were to find Defendant's testimony credible, he has not established, as a matter of law, the requisite elements of "fraud in the execution."
Chirco's defense based on ignorance of the contract's essential terms is not credible. At deposition and at trial, Defendant testified he has worked as a bricklayer in the Detroit metropolitan area for approximately 20 years, 14 of which he has operated his own masonry firm. Plaintiffs' Exhibits 1 through 4 are four different collective bargaining agreements with the Bricklayers' Union covering the periods 1972-1974, 1974-1977, 1977-1980 and 1982-1986. Defendant has admitted signing these agreements and testified that he knew of his obligation to pay fringe benefits thereunder because of his wife's translation and interpretation of those agreements. More importantly, Defendant has admitted signing Plaintiffs' Exhibits 5, 6 and 7 which consist of a total of 27 fringe benefit contribution report forms completed by Mrs. Chirco covering the period April 1972 through October 1974.
The 1982-1986 collective bargaining agreement presently in dispute is not a short-form bargaining agreement, as was the case in Gilliam. Rather, this agreement is virtually identical to the other three Red Book agreements signed by Defendant in that: (1) it is an extensive, 55-page document which sets forth Defendant's responsibilities as an employer, including the obligation to pay pension, health and welfare contributions on behalf of his employees; and (2) it is well known in the masonry industry as the "Red Book Agreement" due to its red cover. Clearly, in light of his own history in the industry, Defendant could not have been ignorant of the contents of this collective bargaining agreement.
Furthermore, Defendant also was given a "reasonable opportunity to obtain knowledge of [the contract's] character or its essential terms." It is undisputed that Martina left with Defendant two copies of the 1982-1986 collective bargaining agreement. Martina did not return to pick up the signed copy for at least a week. Notwithstanding Defendant's inability to read or write English, he was given ample opportunity to seek assistance. In fact, Defendant's wife, who testified that she reads and writes English without any problem, has worked as the company's bookkeeper for many years and has interpreted for Defendant each of the other three collective bargaining agreements which he previously executed. Defendant's testimony that he left the agreements in his truck instead of taking them home for translation does not negate the fact that he was provided with a reasonable opportunity to obtain knowledge of the contract's essential terms.
Finally, Defendant's suggestion that the collective bargaining agreement should not be enforced because the union allegedly made unilateral additions thereto after Defendant signed his name on page 36 of the agreement is without merit. At trial, Defendant testified he did not write: (1) "Guy's Masonry" above the designation "For The Employer"; (2) the company name, mailing address and telephone number in the "Employer Information" section; or (3) the name "Vincent Vitale" as his partner in the same section. Defendant, however, was unsure who inserted this information. *1088 Union business agent Carlo Martina testified that he did not do so.
This Court concludes that non-material additions, such as these, do not render the collective bargaining agreement unenforceable. Defendant fails to cite any authority to the contrary. In fact, Defendant testified that his wife completed similar "Employer Information" sections on the 1972-1974 and 1974-1977 agreements. Notwithstanding those additions, Defendant was obligated to, and did, make the required fringe benefit contributions under those contracts. He is similarly obligated to make those same contributions under the 1982-1986 agreement.
Having determined that Defendant Gaetano Chirco was a signatory to a binding collective bargaining agreement with the Bricklayers' Union, executed without fraud;
IT IS ORDERED that Judgment be entered for Plaintiff Trust Funds on the contractual liability issue raised in their complaint. Defendant is liable for fringe benefit contributions under the 1982-1986 collective bargaining agreement for the period from the 1983 contract execution to the present.
IT IS FURTHER ORDERED that Defendant produce all company records necessary for Plaintiffs' audit within 14 days of entry of this Memorandum Opinion and Order.
IT IS FURTHER ORDERED that Plaintiffs' request for costs and attorneys fees is GRANTED. Plaintiffs are directed to file forthwith a motion for attorney fees and costs, complete with a duly notorized itemization of hours expended with respect to this matter.
IT IS SO ORDERED.