**LABORERS' PENSION FUND and Laborers' Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity; and The Laborers' District Council of Chicago and Vicinity, Plaintiffs,**

v.

**LITGEN CONCRETE CUTTING & CORING COMPANY, Defendant.**

No. 88 C 8531.

United States District Court, N.D. Illinois, E.D.

Sept. 28, 1989.

Hugh B. Arnold, Jac A. Cotiguala, Arnold & Kadjan, Chicago, Ill., for plaintiffs.

Michael P. Davis, McNeil Stokes, Stokes, Shapiro, Fussell & Wedge, Atlanta, Ga., Arthur B. Smith, Jr., Robert P. Casey, Murphy, Smith & Polk, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Two benefit funds, the Laborers' Pension and Welfare Funds of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, in conjunction with the union which created them filed a six-count complaint in this court against Litgen Concrete Cutting and Coring Company and its president, William R. Litgen, on October 6, 1988. The defendants answered this complaint in a timely fashion, asserting several affirmative defenses. These defenses included fraud, estoppel, and misrepresentation on the part of the plaintiffs generally, without specifically identifying who perpetrated these misdeeds.

The parties proceeded with discovery and filed various motions, including one which resulted in entry of summary judgment on three counts of the complaint. See *Pension Fund v. Litgen Concrete Cutting & Coring,* 709 F.Supp. 140 (N.D.Ill.1989) (dis-

missing claims against William Litgen). Three counts remain. The Funds seek recovery of unpaid pension contributions, plus attorneys' fees, costs, and liquidated damages under Counts One and Two. Count Six is a claim by the union against Litgen Concrete for back wages and attorneys' fees.

Nearly the same week that this court entered partial summary judgment, the Seventh Circuit rendered its decision in *Central States, S.E. & S.W. v. Gerber Truck*, 870 F.2d 1148 (7th Cir.1989) (en banc). There the court held that in actions such as this one under § 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145 (1982), pension or welfare funds are "like a holder in due course in commercial law, or like the receiver of a failed bank—entitled to enforce [a] writing without regard to understandings or defenses applicable to the original parties." *Gerber Truck*, 870 F.2d at 1149 (citations omitted). What this means for this case is that regardless of whether the union fraudulently induced Litgen Concrete to promise to contribute to Funds, the Funds are entitled to collect.

*Gerber Truck* has induced both sides to act. The Funds have moved to strike all of Litgen Concrete's affirmative defenses under Rule 12(f), Fed.R.Civ.P.[1] Litgen Concrete has moved for leave to file a counterclaim against the union. The court will address each motion in turn.

### Motion to Strike Affirmative Defenses

■ Rule 12(f) permits the court upon motion of a party or on its own initiative to strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are a "drastic" remedy; for this reason the courts view them with disfavor and grant them infrequently. Generally,

"in order to succeed on a motion to strike surplus matter from an answer, it must be shown that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party." Charles Alan Wright and Arthur R. Miller, 5 Federal Practice and Procedure § 1380 (West 1969) (footnotes omitted).

Litgen Concrete's ten affirmative defenses are extremely broad, and could cover a wide range of conduct by the Funds.[2] The court sees only three that could be unworthy of the court's time: Litgen Concrete's defenses of failure of consideration, preemption, and lack of jurisdiction. *Gerber Truck* seems to foreclose the first completely; as for the latter two, Litgen Concrete never explains how it intends to interpose them against the Funds. Nevertheless, the Funds have not demonstrated how raising these defenses (or any others) prejudice them. Until the Funds do so, the court will not strike Litgen Concrete's affirmative defenses.

### Motion for Leave to File Counterclaim

Litgen Concrete proposes to file a counterclaim against the union for indemnification of amounts which this court might find Litgen Concrete owes the Funds. It further seeks a declaration that the parties have no collective bargaining agreement and recission of any contract or collective bargaining agreement which is the product of the union's fraud. The Funds, but not the union, oppose Litgen Concrete's motion.

There are two rules which could apply to Litgen Concrete's motion: Rule 13(e), which governs the pleading of claims maturing or acquired after the filing of an

---

**1.** In passing, the Funds hint that they want the court to strike Litgen Concrete's request for attorneys fees. The Funds do not request this in their prayer for relief, however, so the court will disregard the Funds' challenge on this issue. See Rule 7(b)(1) (motions shall set forth the relief sought).

**2.** Litgen Concrete correctly observes that while *Gerber Truck* may foreclose certain employer defenses which are based on conduct of the parties who negotiated and executed the writing which created § 1145 liability, *Gerber Truck* does not foreclose inquiry into the actions of the Fund itself in asserting its rights. Hence, Litgen Concrete could raise as a defense against the Funds any of their actions which amount to laches, waiver, fraud, estoppel, misrepresentation, or accord and satisfaction.

answer, and Rule 13(f), which controls the granting of leave to file omitted counterclaims. The parties agree that if Litgen Concrete has a cause of action against the Union, it possessed it at the time it answered the union and the Funds' Complaint. This suggests that Rule 13(f) controls this court's decision.

Rule 13(f) provides: "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." The letter portion of this rule is similar to that for the amendment of pleadings generally, Rule 15(a). Each rule is applied liberally. See *SFM Corp. v. Sundstrand Corp.*, 99 F.R.D. 101, 104–05 (N.D.Ill.1983); Charles Alan Wright and Arthur R. Miller, 6 Federal Practice and Procedure § 1430 (West 1971). The court should allow amendment unless there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc...." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

▪ The Funds (though not the union, it must be stressed) oppose amendment on four grounds. They first argue that Litgen Concrete's counterclaim has no merit, and thus would be futile. An amended pleading which could not survive a motion for summary judgment is futile, and should not be allowed. See *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir.1989); see also cases cited in *In re Olympia Brewing Co. Securities Litigation*, 674 F.Supp. 597, 605 (N.D.Ill.1987).

▪ The Funds give two reasons why Litgen Concrete's claims are futile. The first attempts to rest on *Gerber Truck*, which the Funds read as preventing an employer from raising defenses relating to the formation of a contribution contract against *both* the ERISA–covered fund and the union which the fund benefits. Nothing in *Gerber Truck* suggests this, how-

ever. The issue before that court is stated in the first paragraph of the court's opinion: "We took this case en banc to decide whether, when an employer and union submit to a pension fund documents promising to make contributions on behalf of all employees, understandings and practices *that would prevent enforcement of the writings between employer and union* also defeat the fund's claims." *Gerber Truck*, 870 F.2d at 1149 (emphasis added). The court stressed that its conclusion that defenses between the employer and union could not defeat the fund's claims rested on Congress's intent to protect the assumptions of benefit plans and reduce their litigation costs. See *id.* at 1151–55. Nothing in the opinion nor in the statute which the *Gerber Truck* court construed, 29 U.S.C. § 1145, suggests that Congress intended (or had any reason) to extend these protections to the parties who had prepared and executed the writings.

The Funds misconstrue several other decisions in their attempt to extend the "holder-in-due-course" presumption of § 1145 to the union. In *Robbins v. Lynch*, 836 F.2d 330, 334 (7th Cir.1988), the decision which set the stage for *Gerber Truck*, the court noted that "A claim that the union has promised not to collect a payment called for by the agreement is not a good answer to the [fund's] suit—although it might be a ground on which to obtain damages from the local union." See also *Rozay's Transfer v. Local Freight Drivers, L. 208*, 850 F.2d 1321 (9th Cir.1988) ("*Rozay's II*") (upholding employer's cause of action for indemnification against union for amounts paid to trust fund on theory of fraudulent inducement); *Chicago Dist. Council of Carpenters v. Dombrowski*, 545 F.Supp. 325, 328 (N.D.Ill.1982). As for an unpublished Ninth Circuit opinion cited to the court by the Funds, *Laborer's Health and Welfare Fund for Southern California v. Meekins Inc.*, 869 F.2d 1497 (9th Cir.1989) (table), it too involves an employer's attempt to raise a defense of fraud in the inducement against an ERISA-protected fund, not against the party which perpetrated the fraud.

■ The Funds' second argument why Litgen Concrete's claim is futile is that Litgen Concrete cannot seek some of the relief it desires. This argument applies most directly to Litgen Concrete's prayer for repudiation or recission of any collective bargaining agreement between it and the union. The National Labor Relations Board has held that pre-hire agreements (similar to the ones here) which are exempted from some of the strictures of the National Labor Relations Act, codified as amended at 29 U.S.C. §§ 151 et seq. (1982), by *id.*, § 158(f), may be repudiated only through a Board-conducted election—not by actions of the parties. See *John Deklewa & Sons*, 282 N.L.R.B. 1375, 1385 (1987), enforced in *Intern. Ass'n of Bridge, Etc., Local 3 v. N.L.R.B.*, 843 F.2d 770 (3d Cir. 1988). Litgen Concrete does not dispute this point, and thus the court will not entertain its prayers for recission or repudiation.

The Funds suggest further that Litgen Concrete also cannot seek indemnification from the union. The Funds argue that prior to *Deklewa*, Litgen Concrete had the right to repudiate its contract with the Union and chose not to do so. They submit that Litgen Concrete cannot remain silent about its contract (and thereby maintain labor peace) while the work provisions of the contract are effective, then deny the validity of the contract when the pension funds seek to collect. See, for example, *Lewis v. Mearns*, 168 F.Supp. 134, 139 (1958), aff'd, 268 F.2d 427 (4th Cir.1959) (employer may not affirm and disaffirm union contract as it sees fit). It is difficult to see, however, how and where this argument applies. While Litgen Concrete's failure to repudiate its agreement may estop the company from denying the existence of an agreement, it does not estop it from contesting its terms and scope. There is evidence that Litgen Concrete believed that the agreement covered far fewer employees than the Funds and the union now claim. While Litgen Concrete may not purchase labor peace at bargain prices, there is nothing that prevents it from seeking relief for paying too high a price from the party who assured it that the price would be much lower.

■ The Funds' second major argument is that it is too early for Litgen Concrete to seek indemnification from the union. They suggest that the proper course is to wait until Litgen Concrete's liability to the Funds is fixed. The Funds cite *Henz v. Superior Trucking Co., Inc.*, 96 F.R.D. 219, 220–21 (M.D.Pa.1982) and *Universal Underwriters Ins. Co. v. Security Indus., Inc.*, 391 F.Supp. 326, 329 (W.D.Wash. 1974), among other cases, for the proposition that a counterclaim for contribution or indemnity is premature when liability in the main action is not yet resolved. But as *Henz* notes, see 96 F.R.D. at 220 n. 1, many courts have criticized this view. One criticism, which this court believes is apt, is found in *In re Oil Spill by "Amoco Cadiz" Off Coast of France*, 491 F.Supp. 161 (N.D. Ill.1979). There the court noted that the modern trend is to allow counterclaims for contribution. "This approach seems sound when [as here] the counterclaim is based on pre-action events and only the right to relief depends on the outcome of the main action." *Id.* at 165 (brackets in original), quoting Wright and Miller, 6 Federal Practice and Procedure at § 1411.

The Funds' third argument is that employers cannot bring actions for indemnification in suits where a fund seeks to collect employer contributions. The Funds refer the court to *Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769 (9th Cir.1986) ("*Rozay's I*") and *Rozay's II*. In *Rozay's I*, an employer moved for leave to file a third-party complaint against a union for recission of its contract and indemnification. The employer alleged that the union fraudulently induced the employer to promise to contribute to the union's pension fund. The district court denied leave to file the third-party action, and the Ninth Circuit affirmed the decision as being within the court's discretion. The appellate court noted that it was reasonable for the district court to conclude that impleading the union would be inconsistent with ERISA's policy of streamlining collection of contributions, would have complicated and lengthened the trial, and would have introduced extraneous questions. *Rozay's*

*I,* 791 F.2d at 777. The employer subsequently brought a separate action against the union, and prevailed. See *Rozay's II,* 850 F.2d at 1321.

The Funds attempt to elevate *Rozay's I* and *Rozay's II* to a rule of law on the handling of employer actions against unions for fraudulent inducement of promises to contribute to pension funds. These cases do not present such a rule. Rather, they demonstrate that, like other cases involving the decision to allow new claims, a court must exercise its discretion.

■ The Funds give four reasons why they believe the court should not exercise its discretion in favor of Litgen Concrete. They assert first that the issue of the union's conduct has never been an issue in this dispute; second, the Funds claim that the counterclaim potentially will create a conflict of interest between the Funds and the union; third, they assert inclusion of the counterclaim will overly complicate this case, something which is contrary to the spirit of ERISA; and fourth, they suggest the counterclaim comes at a late date.

None of these arguments is persuasive. Litgen Concrete placed the union's conduct in controversy through its affirmative defenses, which Litgen Concrete filed near the start of this case. If Litgen Concrete's claims against the union create a conflict of interest between the union and the Funds, this conflict will not go away merely by denying leave to file a counterclaim; presumably, Litgen Concrete could file a new action, and the conflict would resurrect. The Funds' third argument would be quite persuasive—and gathers the greatest support in the courts, see *Rozay's I,* 791 F.2d at 777; *Gerber Truck,* 870 F.2d at 1151–55 (ERISA intends to insulate funds from employer-union litigation)—had the union not brought Count Six in the plaintiffs' complaint. It was the plaintiffs who were the first to convert what could have been a simple collection case into something else; they cannot be heard to complain when Litgen Concrete seeks to add to the fray.[3]

The court also finds no merit in the Funds' argument (one contradicting the Funds' earlier assertion that this counterclaim is premature) that Litgen Concrete should have brought its claim sooner. The parties' mutual recognition that *Gerber Truck* changed the legal landscape in this area defeats this suggestion. While there was authority within the Seventh Circuit at the time Litgen Concrete answered the Complaint which indicated Litgen Concrete would have to seek redress from the union, instead of trying to defeat the Funds' claims, see, for example, *Robbins,* 836 F.2d at 330, the fact remains that the Seventh Circuit took *Gerber Truck* en banc, and devoted many pages in its opinion to the issue of a fund's right to enforce its obligation regardless of defenses between the contracting parties. That the Seventh Circuit did so, and that its opinion prompted motions from both Litgen Concrete and the Funds, suggests that *Gerber Truck* is a significant case, one which excuses Litgen Concrete's failure to present its counterclaim in its answer. Litgen Concrete acted with dispatch after *Gerber Truck,* which leads the court to believe that had Litgen Concrete anticipated its holding when it answered, it would have included its proposed counterclaim then.

The Funds' final major contention is that Litgen Concrete has not pleaded fraud in accordance with Rule 9(b). As this court noted recently in *Frank E. Basil, Inc. v. Leidesdorf,* 713 F.Supp. 1194, 1198 (N.D.Ill. 1989), the purpose of Rule 9(b) is to ensure "that allegations of fraud are concrete and particularized enough to give notice to the defendant of the conduct complained of, and to enable the defendant to prepare a defense." Generally a party serves these purposes by setting forth the time, place, and manner of false representations, identities of parties, and consequences of misrepresentations.

■ The court questions whether the Funds have standing to challenge the particularity of a claim made against the union. Assuming that they do, the court

---

**3.** The court would be open to suggestion that Count Six, like the Counterclaim, be severed from any trial of the Funds' claims in Counts One and Two.

finds that the proposed counterclaim is sufficiently particular. The counterclaim sets forth the time (February 10–11, 1983), place (the "Fermi Lab" job site), and manner (oral communication) of false representations; the identities of the parties (Earl A. Hauge, Michael O'Hara, and Brent Zanini); and the consequences of misrepresentations (Litgen Concrete's potential liability to the Funds for unpaid benefit contributions). These allegations sufficiently indicate to the union what it must discover and how it must defend itself, and thus they meet the requirements of Rule 9(b). See *Basil*, 713 F.Supp. at 1198 ("[I]t is not necessary for a party to allege evidentiary details that will be used to support a claim of fraud at a later date.").

## CONCLUSION

The court denies the Funds' motion to strike Litgen Concrete's affirmative defenses, and grants Litgen Concrete leave to file its counterclaim.