MASSACHUSETTS LABORERS' HEALTH AND WELFARE FUND, Massachusetts Laborers' Pension Fund, Massachusetts Laborers' Annuity Fund, Massachusetts Laborers' Legal Services Fund, New England Laborers' Training Trust Fund.

v.

EXPLOSIVES ENGINEERING, INC.

Civ. A. No. 89–2488–WD.

United States District Court,
D. Massachusetts.

March 29, 1991.

Mary Sullivan, Segal, Roitman & Coleman, Boston, Mass., for plaintiffs.

Mitchell J. Notis, Barron & Stadfeld, Boston, Mass., for defendant.

MEMORANDUM AND FIRST ORDER ON DEFENDANT'S MOTION TO COMPEL FURTHER ANSWERS TO INTERROGATORIES (# 18), DEFENDANT'S MOTION TO COMPEL FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS (# 20), AND PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER (# 25)

ROBERT B. COLLINGS, United States Magistrate Judge.

The five-named plaintiffs ("the Funds"), employee benefit plans within the meaning of § 3(3) of ERISA, 29 U.S.C. § 1002(3), have instituted the instant lawsuit against the defendant, Explosives Engineering, Inc. ("Explosives Engineering") seeking collection of monies alleged to be due and owing to them pursuant to the terms of certain collective bargaining agreements. The parties' disagreement with respect to the scope of discovery to be permitted in this action has given rise to the three motions presently before the Court for consideration. In the context of these motions, the single disputed issue is a question of law, i.e., whether the defendant employer is prohibited by the provisions of ERISA from advancing certain affirmative defenses to the plaintiffs' claims for delinquent contributions. Resolution of this issue will effectively define the permissible parameters of discovery and, consequently, the discovery motions themselves.

Although at this juncture of the litigation the record is not fully developed, a

brief review of the background facts of the case is in order. In early 1983, Explosives Engineering was a subcontractor for blasting work to be done in connection with a construction project at Symmes Hospital in Arlington, Massachusetts. On or about January 12, 1983, when the main blasting work had been completed, Louis Mandarini ("Mandarini"), a business agent for Local # 22 of the Laborers' International Union [1], came to the Symmes Hospital worksite to express concern that Explosives Engineering was not a union contractor. Purportedly to avoid potential problems at the worksite, William Haines ("Haines"), the president of Explosives Engineering, agreed to meet with Mandarini.

At this January 12th meeting, the defendant contends that Mandarini insisted that Explosives Engineering sign up with the union, an action which Haines resisted. As the discussion continued, although Haines refused to either sign a general union contract or unionize his whole company, he agreed to sign a contract limited to the Symmes Hospital job. The defendant's version of events is that Mandarini and Haines signed two copies of a contract, one of which included the phrase "for Symmes Hospital only" on it and one which did not incorporate that language. Mandarini allegedly took the "clean" contract and Haines retained the altered document. Any liability in the instant case arises out of this contract signed by Haines and Mandarini.

In response to the plaintiffs' complaint, Explosives Engineering filed an answer including twenty-five separate affirmative defenses. Included within the twenty-five are five so-called "contractual" defenses that the plaintiffs contend may not be raised in an ERISA collection action. The five disputed affirmative defenses are as follows: 1) estoppel (eleventh affirmative defense); 2) waiver (twelfth affirmative defense); 3) no agreement was ever reached to make payments to the Funds (fourteenth affirmative defense); 4) no meeting of the minds regarding the extent to which pay-

ments to the Funds were to be made (fifteenth affirmative defense); and 5) failure of consideration (eighteenth affirmative defense).

■ The various interrogatories and requests for production to which the defendant seeks to compel answers and responses respectively, as well as the depositions as to which the plaintiffs seek a protective order, are all specifically aimed toward discovery on these five defenses. The plaintiff Funds take the position that ERISA, as interpreted by the Courts, precludes the defendant from raising contractual defenses in § 515 actions. Based upon the same caselaw, Explosives Engineering, while acknowledging that its contractual defenses are limited by ERISA in this type of litigation, argues that it may properly defend on the grounds that the contract between the employer and the union is void as distinguished from voidable.

Added to the Employee Retirement Income Security Act in 1980, section 515 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

The history, reasoning and intent behind this legislative enactment has been reviewed *inter alia* by the Seventh Circuit, sitting *en banc*, in *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148 (7 Cir., 1989). Although the amendment was passed without committee reports, the usual source for legislative history, the Court relied upon a statement by Representative Thompson, the House Manager of the bill, when interpreting the scope and impact of § 515. As explained by Representative Thompson:

---

1. Mandarini is currently a trustee of the Massachusetts Laborers' Pension Fund, one of the named plaintiffs herein. He also held that trustee position in 1983.

Because delinquencies of employers in making required contributions are also a serious problem for many multiemployer plans, we wish to make clear the public policy in this area, which this bill is intended to further. Failure of employers to make promised contributions in a timely fashion imposes a variety of costs on plans. . . .

These costs detract from the ability of plans to formulate or meet funding standards and adversely affect the financial health of plans. Participants and beneficiaries of plans as well as employers who honor their obligation to contribute in a timely fashion bear the heavy cost of delinquencies in the form of lower benefits and higher contribution rates. . . .

Recourse available under current law for collecting delinquent contributions is insufficient and unnecessarily cumbersome and costly. Some simple collection actions brought by plan trustees have been converted into lengthy, costly, and complex litigation concerning claims and defenses unrelated to the employer's promise and the plans' entitlement to the contributions. This should not be the case. Federal pension law must permit trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law—other than 29 U.S.C. 186. Sound national pension policy demands that employers who enter into agreements providing for pension contributions not be permitted to repudiate their pension promises.

In this regard we endorse judicial decisions such as *Lewis v. Benedict Coal Corp.* [361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960) ]. . . . Cases such as *Western Washington Laborers–Employers Health and Security Trust Fund v. McDowell* [103 L.R.R.M. 2219 (W.D.Wash.1979) ] . . . and *Washington Area Carpenters' Welfare Fund, et al. v. Overhead Door Company* [488 F.Supp. 816 (D.D.C.1980) ] . . . are considered to have been incorrectly decided and this legislation is intended to clarify the law in this respect by providing a direct, unambiguous ERISA cause of action to a plan against a delinquent employer. 126 Cong.Rec. 23039 (Rep. Thompson).

*Central States v. Gerber Truck Service, Inc., supra,* 870 F.2d at 1152–1153.

In short, the purpose of § 515 of ERISA is to simplify the process of delinquent contribution collection.

Furthering this legislative intent, courts have construed § 515 as limiting the defenses that an employer may interpose in a collection action instituted by an employee benefit plan. As the Seventh Circuit stated:

Defenses based on fraud in the inducement, oral side agreement, course of performance, want of consideration, failure of the union to have majority support . . . are as a class the defenses *most* likely to breed litigation even when asserted in good faith, and they create manifold opportunities for manipulation by crafty operators.

*Central States v. Gerber Truck Service, Inc., supra,* 870 F.2d at 1154.

These types of defenses have uniformly been disallowed. *See, e.g., Bituminous Coal Operators' Association, Inc. v. Connors,* 867 F.2d 625, 634 (D.C., Cir., 1989) ("employer may not defend on the ground of union misconduct in negotiating the agreement"); *Robbins v. Lynch,* 836 F.2d 330, 334 (7 Cir., 1988) ("A claim that the union has promised not to collect a payment called for by the agreement is not a good answer to the trustees' suit"); *Trustees of Laborers Local Union 800 v. Pump House, Inc.,* 821 F.2d 566, 568 (11 Cir., 1987) ("the defense of fraud in the inducement is unavailable as a defense to an action by employee benefit fund trustees to collect delinquent contributions"); *Operating Engineers Pension Trust v. Cecil Backhoe Service, Inc.,* 795 F.2d 1501, 1507 (9 Cir., 1986) ("trust funds cannot, therefore, be estopped based on alleged actions or acquiescence of the union or its agents"); *Southwest Administrators, Inc. v. Rozay's Transfer,* 791 F.2d 769, 775 (9 Cir., 1986) *cert. denied,* 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987). ("The claim that a promise to make contributions

was fraudulently induced is not a legitimate defense.")

The law is quite clear that Explosives Engineerings' defense based on failure or lack of consideration cannot properly be maintained in this action. *Lewis v. Mill Ridge Coals, Inc.*, 298 F.2d 552, 557–558 (6 Cir., 1962); *Laborers' Health and Welfare Trust Fund For Northern California v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539, 548 n. 15, 108 S.Ct. 830, 835 n. 15, 98 L.Ed.2d 936 (1988); *Central States v. Gerber Truck Service, Inc., supra*, 870 F.2d at 1154. With respect to its fourteenth and fifteenth defenses, no agreement was reached and no meeting of the minds respectively, Explosives Engineering argues that ERISA does not preclude contractual defenses which, if proven, would render the contract void.

It is true that the Second Circuit has written:

Our research has disclosed only two defenses recognized by the courts: (1) that the pension contributions themselves are illegal, *see Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 86–88 [102 S.Ct. 851, 861–862, 70 L.Ed.2d 833] (1982), and (2) that the collective bargaining agreement is void (not merely voidable), *compare Operating Eng'rs Pension Trust v. Gilliam*, 737 F.2d 1501, 1503–05 (9th Cir. 1984) (employer who was not aware he was signing a collective bargaining agreement could raise defense), with *Southern California Retail Clerks Union and Food Employers Joint Pension Trust Fund v. Bjorklund*, 728 F.2d 1262, 1265–66 (9th Cir.1984) (employer who knew he was signing collective bargaining agreement, but who was fraudulently induced to enter it, could not raise defense). *See generally Rozay's Transfer*, 791 F.2d at 773–74 (discussing *Gilliam* and *Bjorklund* ).

*Benson v. Brower's Moving and Storage, Inc.*, 907 F.2d 310, 314 (2 Cir., 1990).

The cases upon which the Second Circuit relied in delineating the second defense, *Gilliam* and *Bjorklund,* both involved defenses of misrepresentation. As the Court in *Rozay's Transfer* explained:

The distinction between the types of misrepresentation presented in *Bjorklund* on the one hand and *Gilliam* on the other is the distinction between "fraud in the inducement" and "fraud in the execution" (or "fraud in factum"),

*Southwest Administrators, Inc. v. Rozay's Transfer, supra,* 791 F.2d at 774.

Fraud in the execution which would make a contract void *ab initio* has been deemed to be a valid defense in an ERISA collection action whereas fraud in the inducement which would render an agreement voidable has not. In any event, Explosives Engineering has not alleged any affirmative defense based upon misrepresentation.

Apart from instances of fraud, the Court finds no basis in the caselaw upon which to extend a void/voidable distinction amongst defenses. The particular defenses that Explosives Engineering raises are precisely the type that Congress sought to curtail in enacting § 515. In these circumstances, discovery with respect to the fourteenth and fifteenth affirmative defenses would be futile.

Employee benefit plans are insulated from certain defenses because they are not parties to the agreement between the union and the employer, but rather are in the position of third-party beneficiaries [2] or holders in due course of such an agreement. *Robbins v. Lynch, supra,* 836 F.2d at 333. The rationale for limiting defenses may be questioned when the Fund has direct knowledge or participates in the underlying transaction. As one court has stated:

If it means nothing else, section 515 means that, at least when the Trustees are not implicated in the alleged misconduct, their suit cannot be thwarted by

---

**2.** The Second Circuit has explained that:
Third-party beneficiaries generally are subject to defenses that the promisor could raise in a suit by the promisee.... That is, they step into the shoes of the promisee. Collective

bargaining agreements, however, are an exception to this general rule.
*Benson v. Brower's Moving and Storage, Inc., supra,* 907 F.2d at 313 (2 Cir., 1990) (citations omitted).

**28**

defenses not apparent from the face of the Agreement.

*Bituminous Coal Operators' Association, Inc. v. Connors, supra,* 867 F.2d at 634.

The Ninth Circuit has at least inferentially agreed in holding an estoppel defense unavailing in light of the defendant's failure to focus "on what the *trust funds* knew or intended." *Operating Engineers Pension Trust v. Cecil Backhoe Service, Inc., supra,* 795 F.2d at 1507 (emphasis in original). Similarly, in refusing to strike certain affirmative defenses, one district court noted that:

> [Defendant] correctly observes that while *Gerber Truck* may foreclose certain employer defenses which are based on conduct of the parties who negotiated and executed the writing which created § 1145 liability, *Gerber Truck* does not foreclose inquiry into the actions of the fund itself in asserting its rights. Hence, [defendant] could raise as a defense against the Funds any of their actions which amount to laches, waiver, fraud, estoppel, misrepresentation, or accord and satisfaction.

*Laborers' Pension Fund v. Litgen Concrete Cutting & Coring Company,* 128 F.R.D. 96, 98 ftnt. 2 (N.D.ILL., 1989).

■ Louis Mandarini's status as a trustee of the Massachusetts Laborers' Pension Fund at the time he executed the contract with Explosives Engineering adds a unique wrinkle to this case. The question is to what extent Mr. Mandarini's knowledge can be imputed to that one pension fund. After a further conference held on March 28, 1991, the parties were granted leave to file a supplemental list of pertinent cases on that one limited issue. Any decision with respect to the defenses of estoppel and waiver vis-a-vis the Massachusetts Laborers' Pension Fund will be pretermitted pending receipt of those briefs.

Explosives Engineering is unable to articulate any possible actions undertaken by the other four plaintiff Funds that might support a defense of waiver or estoppel. At most, the defendant is arguing union misconduct in negotiating the agreement, a defense which cannot be asserted against the Funds.

Based upon the reasons set forth, Defendant's Motion To Compel Further Answers To Interrogatories (# 18) and Defendant's Motion To Compel Further Responses To Request For Production of Documents (# 20) shall be, and hereby are DENIED except to the extent that further answers and/or responses are sought from the Massachusetts Laborers' Pension Fund with respect to the defenses of waiver and estoppel. Plaintiffs' Motion For A Protective Order (# 25) shall be, and hereby is, ALLOWED, except to the extent that discovery is sought from the Massachusetts Pension Laborers' Pension Fund with respect to the defenses of waiver and estoppel. A decision with respect to the extent of discovery, if any, that shall be permitted with respect to the defenses of waiver and estoppel as against the Massachusetts Laborers' Pension Fund shall be, and hereby is, PRETERMITTED.