OLIVER M. KAHLE AND BEN JAFFE, AS TRUSTEES FOR TAHOE VILLAGE PROPERTIES, INC., A DISSOLVED NEVADA CORPORATION, APPELLANTS, v. FRED KOSTINER, DOING BUSINESS AS FREDDY KAYE REAL ESTATE, RESPONDENT.

No. 5719

May 28, 1969                    455 P.2d 42

[Rehearing denied June 17, 1969]

*Breen and Young,* and *David R. Hoy,* of Reno, for Appellants.

*Echeverria & Osborne,* of Reno, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Kostiner, doing business as Freddy Kaye, appears as the intervening real estate broker who represented Tahoe Village Properties, Inc., sellers of certain Lake Tahoe property to R. D. Keillor, the purchaser. The issue is whether or not his real estate commission should be paid. The jury in the trial court below granted a verdict for his commission and the seller appeals from the consequent judgment on the verdict.

On January 3, 1963 the buyer and seller executed an agreement naming Nevada Title Guaranty Company as escrow agent

for the purchase of four acres of property together with an option for the purchase of 11 more acres. The purchase price per square foot was agreed upon. The buyer wished to exercise the option on the 11 acres in December of 1963. The seller then refused to provide ultimate means of sewage disposal and to pave the streets and install curbs and gutters. The main disputes in the litigation that developed centers around the requirement by government authorities that sewage disposal provisions be provided at the property and the refusal by the seller to pave the streets and provide curbs and gutters. The buyer contended that the transaction included such facilities while the seller denied such responsibility. Seller expressed the denial in writing by a letter dated December 31, 1963 stating that the seller was not obligated to furnish ultimate means for disposal of sewage or other waste outside of the property line or to pave the streets.

Under the terms of the option agreement that was part of the original contract for the purchase of the four acres the buyer deposited $50,000 for the option to buy the additional 11 acres. The option could be renewed for another year for another $50,000. The second $50,000 was deposited just before the expiration date but in a depositary other than an escrow company named in the other agreement and it contained the condition that the seller provide the sewage disposal and paved streets as it was contended the parties had agreed upon. The seller contends that the condition being baseless destroyed the option and refused not only to honor it but to return the first $50,000. Buyer sued to recover the first $50,000 claiming the seller breached the contract. Broker intervened for his real estate commission to which the seller denied responsibility.

The jury resolved the factual dispute concerning the sewage and street paving in favor of the buyer returning a verdict to the buyer for $50,000 and to the broker for $71,292.03 which was the full amount of his commission had the purchase been consummated. The jury by special interrogatory found that the seller had agreed to pave the streets and provide the desired sewage system and found that the seller had refused to acknowledge this obligation in his letter of December 31, 1963.

On appeal seller contends that his letter of December 31st was not an anticipatory repudiation to the whole agreement because it was not definite and unequivocal, and that the trial court erred in instructing the jury that the doctrine of anticipatory repudiation applies when only a substantial part, rather than all of a contract is repudiated. He also alleges that he

should not be held to pay a commission from a fund that was never in existence.

1. Seller argues that the jury should have been instructed that an anticipatory repudiation must be to the whole contract and the seller's refusal to pave the streets was only a partial breach. The instruction given provided: "You are instructed that to find an anticipatory repudiation of a contract the party so charged must have demonstrated a definite unequivocal and absolute intent not to perform a substantial portion of the contract. To justify the adverse party in treating the repudiation as an anticipatory breach the refusal to perform must be an unqualified repudiation of a substantial portion of the contract."

The instruction was proper. We affirm the doctrine that anticipatory repudiation applies when a substantial portion of the contract is repudiated. Cladianos v. Friedhoff, 69 Nev. 41, 240 P.2d 208 (1952), approved in Evans v. Dorman, 81 Nev. 319, 402 P.2d 652 (1965) (on analogous facts see Evans v. Dorman, supra, at 323); 4 A. Corbin, Contracts § 972 (1951). See also Humphrey v. Sagouspe, 50 Nev. 157, 254 P. 1074 (1927). Since the improvements which were to be made by the seller cost several hundred thousand dollars in comparison with the $700,000 contract purchase price, we cannot say as a matter of law that there was not a repudiation of a substantial part of the contract. Therefore the verdict of the jury that there was a repudiation of a substantial portion of the contract was supported by the evidence. Because there was an anticipatory repudiation, the buyer's failure to tender performance is excused. Finnell v. Bromberg, 79 Nev. 211, 228, 381 P.2d 221 (1963) (Thompson, J., concurring); Country Club Oil Co. v. Lee, 58 N.W.2d 247 (Minn. 1953); 4 A. Corbin, Contracts § 977 at 923 (1951). The jury was told by the buyer that a $50,000 deposit by the buyer when he requested performance was an attempt to purchase. Clearly an escrow deposit of over $200,000 was required for exercise and that was not tendered. But since buyer need not have done anything, his faulty tender is irrelevant.

2. The fund from which the commission was to be paid never came into existence because of the repudiation by the seller. He cannot now use his own conduct which prevented its creation to his advantage. Evans v. Dorman, 81 Nev. 319, 402

P.2d 652 (1965); Humphrey v. Knobel, 78 Nev. 137, 369 P.2d 872 (1962); Bartsas Realty Inc. v. Nash, 81 Nev. 325, 402 P.2d 650 (1965). In this case, further, the agreement requires only the buyer's deposit, i.e., exercise of the option. The seller did not have to perform before the commission came due. Since the failure to exercise the option is excused, the commission came due upon the seller's repudiation.

Affirmed.

COLLINS, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.