STRATOSPHERE LITIGATION L.L.C., Plaintiff–Appellant,

v.

GRAND CASINOS, INC., Defendant–Appellee.

No. 01–15947.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 2002.

Filed Aug. 13, 2002.

---

Jay Goldberg, New York, NY, for the plaintiff-appellant.

Howard J.C. Nicols, Squire, Sanders & Dempsey L.L.P., Cleveland, OH, for the defendant-appellee.

Before: SNEED, HUG, and BERZON, Circuit Judges.

## OPINION

SNEED, Circuit Judge.

This case arises out of the bankruptcy of Stratosphere Corporation ("Stratosphere"). Stratosphere Litigation, LLC ("SL") appeals the district court's grant of partial summary judgment and its decision in favor of Grand Casinos, Inc. ("Grand") following a bench trial.

SL filed a breach of contract action against Grand as a third-party beneficiary to a contract between Grand and Stratosphere. The contract provided that should Stratosphere's annual cash flow fall below a target, Stratosphere would be obligated to raise additional equity and Grand would be obligated to fund an escrow account.

Stratosphere's annual cash flow fell below the target. SL asserts that Grand failed to fund an escrow account when Stratosphere's cash flow fell below the target. It follows, SL insists, that Grand breached the contract.

The district court rejected SL's claim. It held that Grand's obligation to fund an escrow account was a concurrent condition to Stratosphere's obligation to raise additional equity. Having filed for bankruptcy, Stratosphere could not raise the required equity. Therefore, Grand's obligation to fund an escrow account was dis-

charged. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

The agreement, the Standby Equity Commitment ("Commitment"), between Stratosphere and Grand was to facilitate Stratospheres's public offering of $203 million of junk bonds. The agreement was a credit enhancement mechanism designed to reduce the perceived risks of Stratosphere's junk bonds.[1] Stratosphere used the capital to finance the construction and development of the Stratosphere Tower, Casino & Hotel in Las Vegas, Nevada. This business venture ultimately failed, and Stratosphere filed for Chapter 11 bankruptcy.

At issue is the determination of the obligations of Stratosphere and Grand under the Commitment and SL's rights thereunder: Was Grand's obligation to fund an escrow account under § 5(a) of the Commitment conditioned on Stratosphere's ability to raise equity?

### A. The Bankruptcy Court's Ruling

On June 3, 1997, the Official Committee of Noteholders ("Official Committee")[2] moved to assume the Commitment on behalf of Stratosphere pursuant to § 365 of the Bankruptcy Code. The bankruptcy court held that the Commitment would not be so assumed. It further held that Stratosphere and Grand's "respective obligations under the [Commitment] are mutual" and that § 5 of the Commitment is not "an independent and separate obligation of Grand to the Noteholders." The

Official Committee did not appeal the decision of the bankruptcy court.

### B. The District Court's Grant of Partial Summary Judgment

SL then filed an action against Grand for breach of contract. It alleged that Grand breached the Commitment by failing to deposit $20 million in an escrow account when Stratosphere's cash flow fell below the target that triggered Grand's funding obligation. The parties filed cross-motions for summary judgment.

The district court held that SL's claim, that Grand induced Stratosphere's bankruptcy to avoid its obligation to the Noteholders, was barred by res judicata. It granted partial summary judgment in favor of Grand on this issue. However, the district court held that the issue whether Grand's obligation under the Commitment was independent of Stratosphere's obligation was not barred by res judicata and could be adjudicated.

### C. The District Court's Judgment Following the Bench Trial

Subsequently, a bench trial was held to determine whether Grand's obligation under the Commitment was independent of Stratosphere's. The district court found that the parties' respective obligations under the Commitment were mutual and not independent. It therefore held that Grand's obligation to fund an escrow account was discharged by Stratosphere's bankruptcy. It follows that SL's claims against Grand as a third-party beneficiary to the Commitment also failed. SL could

---

1. The Commitment obligated Grand to fund an escrow account whenever Stratosphere's cash flow fell below $50 million. The escrow funds would be distributed to Stratosphere upon raising additional equity.

2. When Stratosphere filed for bankruptcy, an official committee of Stratosphere Noteholders was created to represent the interests of the Noteholders in Stratosphere's bankruptcy. IBJ Shroder Bank & Trust Co. ("IBJ"), the Indenture Trustee to the junk bond offering, was appointed to the Official Committee. SL is the successor trustee to IBJ.

not assert greater rights than could Stratosphere. Also rejected was SL's claim that Grand induced Stratosphere's bankruptcy to avoid its obligation to the Noteholders. This appeal then followed.

## STANDARD OF REVIEW

 Following a bench trial, we review the district court's findings of fact for clear error and its conclusions of law de novo. *Troutt v. Colorado W. Ins. Co.*, 246 F.3d 1150, 1156 (9th Cir.2001). We review the district court's grant of partial summary judgment de novo. *See Orr v. Bank of America*, 285 F.3d 764, 772 (9th Cir. 2002).

## DISCUSSION

### I. Res Judicata

#### A. The Bankruptcy Court's Jurisdiction

 SL challenges the bankruptcy court's jurisdiction over the Noteholders' claim against Grand. This challenge lacks merit. The jurisdiction of a bankruptcy court extends to proceedings "arising under" Title 11, or "arising in" or "related to" cases under Title 11. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). A bankruptcy court's "related to" jurisdiction embraces "more than simple proceedings involving the property of the debtor or the estate." *Id.* at 308, 115 S.Ct. 1493; *accord In re American Hardwoods, Inc.*, 885 F.2d 621, 623 (9th Cir.1989) ("An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action").

 The bankruptcy court's "related to" jurisdiction embraces the determination whether Grand's obligation to fund an escrow account was discharged by Stratosphere's bankruptcy. The Official Committee acknowledged this, and it requested the bankruptcy court to determine "whether pursuant to the terms of the [Commitment], Grand is obligated to place $20 million in an escrow account for the benefit of the Noteholders." SL's contest of the bankruptcy court's jurisdiction is barred by the Official Committee's voluntary consent to it. *See In re Mann*, 907 F.2d 923, 926 (9th Cir.1990) (debtor who filed adversary proceeding in bankruptcy court and never objected to the court's jurisdiction over him "consented" to the court's jurisdiction); *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 88–89 (2d Cir. 1997) ("A party that has had an *opportunity* to litigate the question of subject-matter jurisdiction may not reopen that question in a collateral attack upon an adverse judgment.") (citation omitted).

#### B. SL's Claims Against Grand are Barred by Res Judicata.

 The bankruptcy court held that Grand's obligation to fund an escrow account was conditioned on Stratosphere's performance of its obligation to raise equity, which it did not do. Thus, Grand's obligation was discharged. The Official Committee did not appeal this judgment. Because SL and the Official Committee both represent the Noteholders, the Official Committee's failure to appeal the bankruptcy court's judgment is imputed to SL for res judicata purposes.[3] *See In re*

---

3. Res judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir.2001). Identity of claims exists when two suits arise from "the same transactional nucleus of facts." *Id.* at

714. Privity between parties exists when a party is "so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *Schimmels*, 127 F.3d at 881 (internal quotations and citations omitted).

*Schimmels,* 127 F.3d 875, 881 (9th Cir. 1997). Thus, SL cannot challenge the bankruptcy court's determination that Grand's obligation to fund an escrow account was discharged.

■■■■ Furthermore, Stratosphere's second reorganization plan discharged Grand's obligation to the Noteholders. The bankruptcy court confirmed this plan, and the Official Committee did not object. Accordingly, SL is barred from asserting a claim against Grand. As held in *Trulis v. Barton,* 107 F.3d 685, 691 (9th Cir.1995):

> Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect.... Creditors who do not wish to release third party debtors pursuant to the principal debtor's plan of reorganization should object to confirmation of the plan on the ground that such a plan provision is violative of section 524 and not within the power, even jurisdiction, of the bankruptcy court.

*Id.* (citations omitted).

SL also contends that the bankruptcy court lacked the power to release Grand's liability to the Noteholders because Grand is a third party non-debtor. SL relies on *In re Lowenschuss,* 67 F.3d 1394, 1401 (9th Cir.1995). It is true that a bankruptcy court cannot confirm a reorganization plan that discharges the liabilities of a third party. However, SL is barred from collaterally challenging the bankruptcy court's confirmation of Stratosphere's second reorganization plan. This would be so even if the plan contained illegal provisions. *See In re Pardee,* 193 F.3d 1083, 1086 (9th Cir.1999) ("This court has recognized the finality of confirmation orders even if the

confirmed bankruptcy plan contains illegal provisions."); *In the Matter of Gregory,* 705 F.2d 1118, 1121 (9th Cir.1983) (creditor's failure to raise objection to legality of confirmation plan "at the confirmation hearing or to appeal from the order of confirmation should preclude its attack on the plan or any provision therein as illegal in a subsequent proceeding."). We hold, therefore, that SL's claims against Grand are barred by res judicata.[4]

## II. Contract Interpretation & Defenses

### A. Grand's Obligation to Fund an Escrow Account and Stratosphere's Obligation to Raise Equity Were Concurrent Conditions.

Notwithstanding the bar of res judicata, SL's claim against Grand also fails because Grand's obligation to fund an escrow account under § 5(a) of the Commitment was conditioned on Stratosphere's ability to raise equity.

Section 1 of the Commitment obligates Stratosphere to raise additional equity when its consolidated cash flow falls below $50 million ("Equity Raising Obligation"). Should this occur, § 5(a) of the Commitment obligates Grand to deposit funds in an escrow account of an amount sufficient to restore the balance to $50 million ("Escrow Funding Obligation"). The issue is whether Stratosphere must raise additional equity before Grand is obligated to fund an escrow account. We find that Stratosphere's obligation to raise equity was a concurrent condition to Grand's obligation to fund an escrow account.

■■■■ Whether a contract is ambiguous is a question of law to be reviewed de

---

4. The bankruptcy court's assertion that it did not decide whether "Grand may have frustrated the [Commitment]" is of no consequence because the Official Committee neither appealed the bankruptcy court's decision nor objected to the confirmation of Stratosphere's second reorganization plan. For this reason, the district court should have granted Grand's motion for summary judgment in full.

novo. *Lakeside Non–Ferrous Metals, Inc. v. Hanover Ins. Co.,* 172 F.3d 702, 704 (9th Cir.1999); *Local Motion, Inc. v. Niescher,* 105 F.3d 1278, 1280 (9th Cir.1997). Nevada law determines the proper interpretation of the Commitment. The Commitment does not specify whether Grand's § 5(a) obligation is independent of Stratosphere's § 1 obligation. It only indicates that sections 1 and 5 are interrelated.

 In truth, § 5(a) of the Commitment is somewhat ambiguous. One provision of § 5(a) suggests that Grand's Escrow Funding Obligation is triggered by Stratosphere's failure to meet its Equity Raising Obligation within a specified timeframe.[5] However, a second provision of § 5(a) suggests that Grand's Escrow Funding Obligation is conditioned on Stratosphere's ability to raise equity.[6] Who, exactly, should proceed when is not clearly indicated. An uncertainty exists. Therefore, the Commitment is ambiguous.[7] *See Econ. Forms Corp. v. Law Co., Inc.,* 593 F.Supp. 539, 540 (D.Nev.1984) ("A contract ... is ambiguous if it is reasonably susceptible to more than one interpretation"). The district court properly admitted extrinsic evidence to ascertain the intent of the parties on this issue. *See Farmers Ins. Exch. v. Young,* 108 Nev. 328, 832 P.2d 376, 379 n. 3 (Nev.1992); *Union Bldg. Materials Corp. v. Haas &*

*Haynie Corp.,* 577 F.2d 568, 572 (9th Cir. 1978) ("Extrinsic evidence is properly admitted to help ascertain the intended meaning of ambiguous writings.").

 In discerning the meaning of an ambiguous contract, "the interpretation which the parties themselves have placed upon it is given great, and oftentimes, controlling effect by the courts." *Flyge v. Flynn,* 63 Nev. 201, 166 P.2d 539, 556 (Nev.1946). We must determine whether the parties intended their obligations under the Commitment to be mutual.

 The testimony of witnesses who participated in the drafting of the Commitment on behalf of Stratosphere and Grand reasonably suggests that the parties viewed their respective obligations under the Commitment as being mutual and requiring concurrent performance.

Andrew Blumen, Stratosphere's executive Vice President, General Counsel, and Secretary who was a signatory to the Commitment, testified that the parties' obligations under the Commitment were mutual.[8] Lyle Berman, Grand's Chief Executive Officer and signatory to the Commitment, also testified that "there was no intent to put money into the escrow if there was no chance of getting it back or equity back."

---

**5.** This provision provides that Grand shall deposit funds in an escrow account when Stratosphere's Equity Raising Obligation has not been met by the seventy-fifth day following a fiscal yearly period.

**6.** This provision provides: *"Concurrently with a consummation of the Rights Offering* [i.e., stock sale] *...,* the Trustee shall release to the Company [Stratosphere] from such Escrow Account an amount equal to the purchase price of the Common Stock which Grand is obligated to purchase ...." (emphasis added). This provision indicates that escrow funds would not be disbursed to Stratosphere until it raised equity. Were Stratosphere un-

able to raise equity, it would not receive any funds from the escrow account.

**7.** SL in fact conceded to the district court that the Commitment is ambiguous.

**8.** David Levine, the investment banker retained by Stratosphere in its Note Offering, similarly testified that Grand was either to receive equity for its cash infusion or be reimbursed in cash. Russell Lederman, Stratosphere's outside counsel who drafted the portion of the Stratosphere Prospectus dealing with the Commitment, shared Levin's understanding of the Commitment.

That Stratosphere's Equity Raising Obligation and Grand's Escrow Funding Obligation were concurrent conditions is also evident from a comparison of the Commitment with the Notes Completion Guarantee ("Guarantee"). These agreements were contemporaneously executed to facilitate the public offering of Stratosphere's junk bonds.

The Commitment incorporates by reference the Guarantee. The Guarantee was intended to be a guarantee while the Commitment was not. These agreements have three significant differences.

First, the Guarantee contains an independent obligations clause that makes Grand's obligation, to provide $50 million for the construction of the Stratosphere Tower and Casino, independent of Stratosphere's obligations. It provides: "The obligations of the Guarantor [Grand] hereunder are independent of the obligations of the Obligor [Stratosphere]." In contrast, the Commitment does not have an independent obligations clause.

Second, the Notes Completion Guarantee, as its title suggests, is a guarantee. It provides that "the Guarantor hereby irrevocably and unconditionally guarantees the Obligor's obligations to complete the construction of the Resort ... [and] the payment of all Amounts Required For [its] Completion ...." In contrast, nowhere in the Commitment does Grand similarly guarantee the payment of funds.

Third, the Guarantee precludes application of bankruptcy law to Grand's funding obligation.[9] In contrast, the Commitment specifically provides that it is subject to bankruptcy law.[10]

These differences between the Commitment and the Guarantee indicate that the Commitment was not a guarantee. *See Flyge*, 166 P.2d at 558 ("the expression of one thing excludes others.") (internal quotations and citations omitted). We decline to interpret the Commitment in a way that would make meaningless its provisions. *See Musser v. Bank of America*, 114 Nev. 945, 964 P.2d 51, 54 (Nev.1998) (citation omitted). We hold that Grand's Escrow Funding Obligation was a condition concurrent to Stratosphere's *ability* to raise equity. The record indicates that even if Grand had to fund an escrow account prior to Stratosphere's raising of equity, the funds would not be disbursed to Stratosphere until it raised equity. By filing for bankruptcy, Stratosphere could no longer raise equity. Therefore, Grand's Escrow Funding Obligation was discharged.

## B. SL's Claims Against Grand Are Subject to the Defenses That Grand Could Assert Against Stratosphere.

Having found that Grand's Escrow Funding Obligation was conditioned on Stratosphere's ability to raise equity, we next must determine whether SL's claims against Grand are subject to the defenses that Grand could assert against Stratosphere.

That SL is an intended third-party beneficiary to the Commitment between Stratosphere and Grand is evident from the language of the Commitment. The Commitment provides that it is "a material inducement to the purchasers of the Notes." "The rights of a third-party beneficiary are limited by the contract be-

---

**9.** It provides: "[T]he obligations of the Guarantor [Grand] under this Completion Guarantee shall not be altered, limited or affected by any proceeding, ... involving the bankruptcy [of Stratosphere]...."

**10.** It provides that "this Standby Equity Commitment will be ... enforceable against Grand in accordance with its terms, subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and similar laws affecting creditor's rights...."

tween the promisor and the promisee." *Punikaia v. Clark,* 720 F.2d 564, 570 (9th Cir.1983). A third-party beneficiary who seeks to enforce a contract does so subject to the defenses that would be valid as between the contracting parties. *See Morelli v. Morelli,* 102 Nev. 326, 720 P.2d 704, 706 (Nev.1986); *Gibbs v. Giles,* 96 Nev. 243, 607 P.2d 118, 120 (Nev.1980). However, this rule is subject to certain public policy exceptions.

■■■ SL contends that the instant case qualifies as such an exception. We disagree because there is no public policy to support SL's position.[11] Alternatively, SL contends that Restatement (Second) of Contracts § 311(3) (1981) ("Restatement") provides an exception, precluding Grand from asserting Stratosphere's breach as a defense against SL. However, SL cannot rely on Restatement § 311(3) because it cannot establish justifiable reliance.[12] There is no evidence to establish that SL materially changed its position in justifiable reliance on Grand's promise to fund an escrow account. Although Grand's obligation to fund an escrow account was "a material inducement" to the *original purchasers* of the Notes, at least some of the Noteholders who assigned their claims to SL purchased their Notes *after* Stratosphere filed for bankruptcy. These Noteholders knew that Stratosphere's bank-

ruptcy rendered enforceability of the Commitment questionable. Therefore, SL cannot claim justifiable reliance on behalf of these Noteholders. *See In re Eashai,* 87 F.3d 1082, 1091 (9th Cir.1996) ("If the creditor had warning that the debtor's account was in danger of default, the creditor will not be able to establish justifiable reliance.").

Furthermore, the original Noteholders consented to Stratosphere's bankruptcy. They negotiated and signed Stratosphere's first reorganization plan, which permanently discharged Grand's obligations under the Commitment. Stratosphere's second reorganization plan likewise discharged Grand's obligations under the Commitment. The Prospectus also alerted the original Noteholders to the risk of bankruptcy associated with Stratosphere's junk bonds. Therefore, the original Noteholders cannot establish justifiable reliance.

Under these circumstances, we conclude that SL's claims against Grand are subject to the defenses that Grand could assert against Stratosphere.

## C. Stratosphere Breached the Commitment by Filing for Bankruptcy.

We next turn to whether Stratosphere's bankruptcy resulted in its anticipatory re-

---

11. This is evident from a comparison of the facts of the instant case with those invoking public policy exceptions to traditional contract law principles. *See Morelli,* 720 P.2d at 706–07 (wife's death did not discharge husband's obligation to pay child's college tuition even though it made fulfillment of a condition precedent impossible); *Giles,* 607 P.2d at 120–21 (the statutory period of limitations is tolled during the infancy of a third-party beneficiary seeking to enforce an agreement to establish a trust); *Carpenters Health & Welfare Trust Fund v. Bla Delco Constr., Inc.,* 8 F.3d 1365, 1369 (9th Cir.1993) (promisor's contract defenses against third-party beneficiary are legislatively limited in trust fund

collection actions); *Southwest Adm'rs, Inc. v. Rozay's Transfer,* 791 F.2d 769, 773 (9th Cir. 1986) (same).

12. Restatement § 311 provides that in the absence of a contrary provision in a contract, a promisor and promisee retain the power to discharge or modify the duty owed to an intended third-party beneficiary by subsequent agreement. However, "[s]uch a power terminates when the beneficiary, before he receives notification of the discharge or modification, materially changes his position in justifiable reliance on the promise...." Restatement § 311(3).

pudiation of the Commitment. If so, Grand's obligation to SL under the Commitment was discharged.

■■■■■ Anticipatory repudiation occurs, when a party through conduct or language, makes a clear, positive and unequivocal declaration of an intent not to perform. *Enloe v. Blain,* 94 Nev. 198, 577 P.2d 60 (Nev.1978); *Covington Bros. v. Valley Plastering, Inc.,* 93 Nev. 355, 566 P.2d 814, 817 (Nev.1977). In the present case, Stratosphere repudiated the Commitment through both language and conduct. Stratosphere stated that it could not perform its obligations under the Commitment as a result of its bankruptcy. Stratosphere also filed for bankruptcy, which rendered its performance under the Commitment impossible. Therefore, Stratosphere breached the Commitment. *See Minidoka Irrigation Dist. v. Dep't of the Interior,* 154 F.3d 924, 927 (9th Cir. 1998) (anticipatory repudiation occurs when "the act make[s] the promisor's performance impossible") (internal quotations and citation omitted).

As explained above, SL is subject to the defenses that Grand could assert against Stratosphere. Therefore, Stratosphere's anticipatory repudiation discharged Grand's obligation to SL. *See Kahle v. Kostiner,* 85 Nev. 355, 455 P.2d 42, 44 (Nev.1969) ("Because there was an anticipatory repudiation, the [promisor's] failure to tender performance is excused").

**D. Grand Did Not Induce Stratosphere's Bankruptcy.**

■■■ Finally, SL contends that Grand induced Stratosphere's bankruptcy to avoid its Escrow Funding Obligation. Therefore, SL insists, Grand should be precluded from asserting Stratosphere's anticipatory repudiation as a defense against SL. The record does not support SL's position.

Although Grand was the largest shareholder of Stratosphere and had influence over its Board of Directors ("Board"), there is no evidence to suggest that Stratosphere filed for bankruptcy in bad faith. The bankruptcy court found that Stratosphere's second reorganization plan was "proposed in good faith and not by any means forbidden by law." The district court also rejected SL's contention that Grand improperly induced Stratosphere's bankruptcy.

The record indicates that Stratosphere's bankruptcy was caused by its financial downfall rather than by Grand's alleged attempt to avoid its Escrow Funding Obligation. Stratosphere filed for bankruptcy after it (1) suffered a net loss of $348.8 million, (2) defaulted on a $37.5 million capital lease transaction, (3) had its stock delisted from the Pacific Stock Exchange, and (4) failed to pay the first required interest payment on its Notes. These financial difficulties, rather than Grand's alleged manipulation of Stratosphere's Board, caused Stratosphere's bankruptcy. Contrary to SL's contention, Grand did not benefit from Stratosphere's bankruptcy. Rather, it lost approximately $100 million as a result.

Because Grand did not induce Stratosphere's bankruptcy, it is not precluded from asserting Stratosphere's anticipatory repudiation as a defense against SL. Therefore, SL's claims against Grand fail.

**AFFIRMED.**

BERZON, Circuit Judge, concurring in part:

I join only Part I of the majority's opinion. In light of our conclusion in Part I that res judicata controls the outcome of this case, it is unnecessary to reach the contract interpretation questions raised

here. For that reason, I do not join the remainder of the majority's opinion.