212 P.3d 881

**Patti HOWELL, Plaintiff/Appellee,**

**Robert Howell and Patti Howell, Plaintiffs/Cross–Appellants,**

**v.**

**Pete HODAP, Defendant/Appellant/Cross–Appellee.**

**Robert Howell and Patti Howell, Plaintiffs/Appellants/Cross–Appellees**

**v.**

**Randy Johnson, Defendant/Appellee/Cross–Appellant.**

No. 1 CA–CV 08–0027.

Court of Appeals of Arizona, Division 1, Department A.

May 12, 2009.

Law Offices of Charles Anthony Shaw PLLC By Charles Anthony Shaw, Prescott, Attorneys for Appellants/Cross–Appellees Robert and Patti Howell and Cross–Appellant Patti Howell.

City of Prescott Legal Department By Thomas Lloyd, Chief Assistant City Attorney, Prescott, Attorneys for Appellant/Cross–Appellee Hodap.

Jellison Law Offices PLLC By James M. Jellison, Phoenix, Attorneys for Appellee/Cross Appellant Johnson.

## OPINION

BARKER, Judge.

¶ 1 Robert Howell and Pete Hodap bring separate appeals related to a civil suit alleging multiple constitutional and tort violations arising out of the execution of a search warrant. Patti Howell and Randy Johnson submit cross-appeals. For the following reasons and those set forth in the simultaneously filed memorandum decision,[1] we affirm in part and reverse in part.

## I.

¶ 2 On Wednesday, March 5, 2003, at about 6:30 in the morning, several officers with Prescott Area Narcotics Task Force ("PANT"),[2] including Pete Hodap and Randy Johnson, arrived at Robert and Patti Howell's home to execute a search warrant. The house was quiet, and the officers expected the occupants to be asleep. PANT Officer Kell Palguta walked up to the door and checked to see if it was locked. Finding the door locked, Hodap put a halogen tool into the lip of the security door.

¶ 3 Using his fist, Palguta knocked three times, announced "police, search warrant," knocked three times again, and again announced "search warrant." The knocking and announcing lasted approximately five to eight seconds.

¶ 4 Hearing no response from inside the house, Hodap instructed another PANT officer, Detective Chris Wylie, to start breaching the outer security door. Using a battering ram, Wylie struck a pick wedged between the groove of the security door and the door frame two or three times; Hodap then muscled through the outer security door, prying it open. Wylie then struck the interior door with the ram, and it opened immediately. It took the PANT officers about fifteen to twenty seconds to breach the outer security door and the interior door. Palguta continued to knock and announce the entire time.

---

1. Arizona Rule of Civil Appellate Procedure 28(g) provides as follows:

   Partial Publication of Decisions. When the court issuing a decision concludes that only a portion of that decision meets the criteria for publication as an opinion, the court shall issue that portion of the decision as a published opinion and shall issue the remainder of the decision as a separate memorandum decision not intended for publication.

2. PANT is a multiple-agency task force designed to specifically target drug enforcement. It is composed of detectives and officers from throughout Yavapai County, including Chino Valley, Prescott, Prescott Valley Sheriff's Office, Sedona, and Camp Verde.

¶ 5 Robert Howell was "startled awake" by a "tremendous noise"; he was "terrified" because it "sounded like the whole house was coming apart." He feared that his family was "under attack." Robert ran towards the door, and when he saw his son near the door, he screamed for him to get away from the door. He then ran back to his bedroom, grabbed the pistol near his bed, and headed back towards the door. Just as the PANT officers breached the interior door, Robert fired a "warning shot." The bullet came within inches of hitting Wylie before striking a trellis. Robert believed he had shot the couch in his living room.

¶ 6 When Robert realized the police were at his door, he "threw the gun," "pivoted down," and put his hands up and yelled "don't shoot." Hodap then ordered Robert to get up and walk backwards out of the house. Once outside, Johnson grabbed Robert, pulling him off the porch. He then instructed Robert three times to "get on the ground." When Robert did not get down on the ground, Johnson pushed him forward with his hand. Several officers grabbed Robert to place him on the ground. "Encompassed" by officers, Robert dropped onto the ground, twisting upon impact and landing on his right shoulder.

¶ 7 Hodap similarly ordered Patti Howell out of the house. When she got to the front doorway, one of the officers grabbed her, pulled her out of the house, dragged her out to the sidewalk, and threw her on the ground, scraping her foot and causing abrasions. Two officers, later identified as Palguta and Johnson, pulled Patti's arms behind her back and flipped her around such that she hit her elbow on the concrete. She was then handcuffed and brought to the porch.

¶ 8 Police officers from the Prescott Police Department then brought Patti to the police station and placed her in an interview room.[3] She was required to stay in the interview room for eight hours until the Prescott Police Department completed its investigation. Palguta and Johnson notified Patti when she was free to leave.

¶ 9 Robert Howell was charged with attempted murder, aggravated assault, and weapons misconduct.[4] Those charges were dismissed approximately two years later. No charges were ever brought against Patti Howell. After the incident, the Howells were evicted from their rental home, and Robert Howell began to notice pain in his right shoulder.

¶ 10 In December 2003 the Howells filed a complaint in Yavapai County Superior Court against multiple police officers, including Hodap and Johnson, asserting the following claims for relief: (1) Violation of Arizona Constitution—Substantive Due Process; (2) Violation of Arizona Constitution—Unreasonable Search and Seizure; (3) Violation of Arizona Constitution—Excessive Force; (4) Violation of Arizona Constitution—Unconstitutional Arrest; (5) Violation of A.R.S. § 13–3916; (6) Negligence; (7) Intentional Infliction of Emotional Distress; (8) Negligent Infliction of Emotional Distress; (9) False Arrest; and (10) Assault and Battery.

¶ 11 Prior to the jury trial in Yavapai County Superior Court, the Howells filed a complaint in federal court, asserting the following claims for relief: (1) Violation of 42 U.S.C. § 1983—Substantive Due Process; (2) Violation of 42 U.S.C. § 1983—Unreasonable Search and Seizure; (3) Violation of 42 U.S.C. § 1983—Excessive Force; (4) Violation of 42 U.S.C. § 1983—Unconstitutional Arrest; (5) Violation of 42 U.S.C. § 1983— Interference with Howell's Right to a Fair Trial Against Defendant Polk Only. The "Allegations Common to All Claims" section in the federal district court complaint was nearly identical to the "Allegations Common to All Claims" section in the Yavapai County Superior Court complaint with the exception that the district court complaint added two

---

3. The officers who took Patti to the police station and questioned her were not named as defendants in this case.

4. While searching the residence, police officers discovered a small baggie allegedly containing residue of marijuana. The Howells successfully moved *in limine* to preclude this evidence at trial on the basis that (1) the State did not prosecute the Howells for possession of marijuana, and (2) a chemical analysis did not confirm that the residue was marijuana.

paragraphs and one line relating to Defendant Polk.

¶ 12 The federal district court entered summary judgment against the Howells on their claims for substantive due process, excessive force, and unconstitutional arrest. A jury trial was held on the remaining claims. The jury returned a verdict in favor of the defendants (including Hodap and Johnson) on these claims.

¶ 13 Johnson then filed a summary judgment motion in the state proceeding on the basis of collateral estoppel (issue preclusion) and res judicata (claim preclusion) citing the final judgment in the Howells' federal action. Hodap filed a summary judgment motion asserting collateral estoppel and joined in Johnson's supplemental briefing on claim preclusion. The trial court denied the motions for summary judgment and later denied their motions for clarification.

¶ 14 The state case went to trial in June 2007. Prior to jury deliberations, the court granted the defendants' motions for judgment as a matter of law as to the Howells' claims for (1) substantive due process, (2) unconstitutional arrest, (3) judicial deception, (4) false arrest as to Robert Howell, and (5) assault. The court also determined that Hodap was liable to Patti Howell for false imprisonment and granted Patti Howell's motion for judgment as a matter of law on that count. The trial court denied all other motions for judgment as a matter of law. The remaining claims went to the jury.

¶ 15 The jury returned verdicts in favor of the defendants on all remaining claims and awarded Patti Howell $10,000 in damages on the false arrest claim. In assigning fault on

the false arrest claim,[5] the jury identified Hodap as 100% at fault and assigned no fault to Palguta, Johnson, or Robert Howell. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## II.

¶ 16 Hodap and Johnson both assert that the trial court erred by refusing to apply the doctrine of claim preclusion in favor of the defendants.[6] We agree.

¶ 17 We review *de novo* the claim preclusive effect of a prior judgment. The final judgment was issued by a federal court; therefore, federal law dictates the preclusive effect of the judgment. *In re Gen. Adjudication of All Rights to Use Water in the Gila River Sys. & Source*, 212 Ariz. 64, 69, ¶ 13, 127 P.3d 882, 887 (2006) ("Federal law dictates the preclusive effect of a federal judgment."). Claim preclusion, or res judicata[7] bars a claim when the earlier suit "(1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." *Mpoyo v. Litton Electro–Optical Sys.*, 430 F.3d 985, 987 (9th Cir.2005) (internal quotation marks omitted); *Stratosphere Litig. LLC v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 n. 3 (9th Cir.2002) (same).

¶ 18 The parties do not dispute the last two elements—that the federal claims reached a final judgment on the merits and that the claims involved the identical parties. We turn then to whether the earlier suit involved the same claim or cause of action as the later suit. In the *Gila River* case, our

---

5. We express no view as to whether comparative fault principles may appropriately be applied to a false arrest claim. Resolution of that issue is not necessary to the resolution of this appeal.

6. The parties make additional arguments which are addressed in the memorandum decision filed concurrently.

7. We consider "claim preclusion" synonymous with "res judicata" and "issue preclusion" synonymous with "collateral estoppel." *See Airfreight Express Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, 107 n.3, ¶ 11, 158 P.3d 232, 236 n. 3 (App.2007) (using the "more modern terms 'claim preclusion' instead of 'res judicata' and

'issue preclusion' instead of 'collateral estoppel' "). The parties often referred to "res judicata" and "collateral estoppel" below in their pleadings, and we cite these terms as they used them when necessary. However, our analysis uses the modern terms of "claim preclusion" and "issue preclusion," unless the context makes a reference to "res judicata" or "collateral estoppel" more clear. *See Circle K Corp. v. Indus. Comm'n*, 179 Ariz. 422, 425, 880 P.2d 642, 645 (App.1993) (recognizing "res judicata and collateral estoppel" as more confusing and less descriptive compared to "claim preclusion" and "issue preclusion").

supreme court analyzed in some detail the applicable test for what constitutes the same claim for purposes of claim preclusion. 212 Ariz. at 70–72, ¶¶ 18–24, 127 P.3d at 888–90. Our supreme court noted, "[t]he Supreme Court of the United States has never precisely defined the test for determining if there is an identity of claims in two actions for purposes of claim preclusion." *Id.* at 70, ¶ 18, 127 P.3d at 888. The Arizona Supreme Court found it unnecessary to determine which test applied. *Id.* at 72, ¶ 24, 127 P.3d at 890. Under these circumstances we look to the controlling federal law in the circuit in which the federal judgment was entered. *See, e.g., Maricopa–Stanfield Irrigation & Drainage Dist. v. Robertson*, 211 Ariz. 485, 491, ¶ 36, 123 P.3d 1122, 1128 (2005) (applying Ninth Circuit law to determine the preclusive effect of a ruling by its inferior court); *cf. Garcia v. Gen. Motors Corp.*, 195 Ariz. 510, 513, ¶ 7, 990 P.2d 1069, 1072 (App.1999) (noting in the context of collateral estoppel that "the law of the forum to first decide the issue" governs the preclusive effect of the ruling).

¶ 19 In Ninth Circuit jurisprudence, while the specific standard enunciated in the cases may vary, the guiding principles are clear, and their application leads to the same result in this case. Several of the cases announce a four-part test as follows:

(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.

*Mpoyo*, 430 F.3d at 987; *Chao v. A–1 Med. Servs., Inc.*, 346 F.3d 908, 921 (9th Cir.2003) (same). Other Ninth Circuit cases do not apply this four-part test. *See Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064 (9th Cir.2003); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708 (9th Cir.2001). In those cases, the Ninth Circuit stated more directly that "identity of claims exists when two suits arise from 'the same transactional nucleus of facts.'" *Tahoe–*

*Sierra*, 322 F.3d at 1078 (quoting *Stratosphere Litig. LLC*, 298 F.3d at 1143 n. 3); *Owens*, 244 F.3d at 714; *see also Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir.2000) ("The central criterion in determining whether there is an identity of claims between the first and second adjudications is 'whether the two suits arise out of the same transactional nucleus of facts.'") (citation omitted). Indeed, even under the cases applying the four-part test, the Ninth Circuit has held that "[t]he first criterion [same transactional nucleus of facts] controls and assures the two suits involve the same claim or cause of action ... [because w]e have often held the common nucleus criterion to be outcome determinative." *Mpoyo*, 430 F.3d at 988; *see also Int'l Union v. Karr*, 994 F.2d 1426, 1429–30 (9th Cir.1993) (listing cases with the same nucleus of operative facts being the exclusive factor in determining whether a second suit arises out of the same claim).

¶ 20 Importantly, Ninth Circuit jurisprudence emphasizes that differences in the specific legal theory pled in the subsequent suit are irrelevant so long as the claim "'could have been raised in the prior action.'" *Owens*, 244 F.3d at 713 (quoting *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir.1997)). The rule is as follows:

Res judicata bars relitigation of all grounds of recovery that were asserted, or *could have been asserted*, in a previous action between the parties, where the previous action was resolved on the merits. *It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather the relevant inquiry is whether they could have been brought.*

*United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 909 (9th Cir.1998) (emphasis added). The key is whether the subsequent claims arise out of the same nucleus of facts. *Tahoe–Sierra*, 322 F.3d at 1078 ("Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action.").

¶ 21 In this case, there is no question that the federal action and the state court

action "arise out of the same transactional nucleus of facts." The Howells do not dispute this. As noted earlier, the "Allegations Common to All Claims" portion of the federal complaint was nearly identical to the "Allegations Common to All Claims" section in the state court action.

¶ 22 The Howells' primary argument is that there are more expansive rights of protection for a citizen against unreasonable searches under the Arizona Constitution than there are under the United States Constitution. *See State v. Ault*, 150 Ariz. 459, 463, 724 P.2d 545, 549 (1986) ("The Arizona Constitution is even more explicit than its federal counterpart in safeguarding the fundamental liberty of Arizona citizens."); Ariz. Const. art. 2, § 8 ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law."). Whether there are broader protections under Article 2, Section 8 of the Arizona Constitution, and whether a private right of action under that article even exists, are unresolved questions of law. We need not address them. The critical point is that the Howells' claims under the Arizona Constitution arise out of the same nucleus of facts and could have been raised in the federal court action but were not.[8] *See W. Radio Servs.*, 123 F.3d at 1196 n. 8 ("We have no occasion here to decide whether the claims [plaintiff] raises here are cognizable under NEPA [National Environmental Policy Act]. We conclude only that any cognizable claims should have been raised in [the prior action], and are thus barred by res judicata.").

¶ 23 The state action additionally alleged multiple tort violations including negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, assault, and battery. All these claims arise out of the same transactional nucleus of facts, even though the legal theories are different.

We note, moreover, that the damages allegations are exactly the same in both suits, except that the state complaint includes damages for past lost business opportunities, and the federal complaint alleges punitive damages.

¶ 24 It is clear that the Ninth Circuit has applied claim preclusion in circumstances that "arguably address[ed] different particular rights" than the first suit. *Mpoyo*, 430 F.3d at 987. In *Mpoyo*, the plaintiff brought a lawsuit against his former employer alleging racial discrimination and retaliation in violation of Title VII. *Id.* at 986. After the court granted summary judgment in favor of the defendant, the plaintiff filed a second action alleging claims under the Fair Labor Standards Act and Family and Medical Leave Act. *Id.* The court considered the different rights involved with the different claims in the separate actions:

> In *Mpoyo I* ... Mpoyo alleged racial discrimination (resulting in varied forms of harassment) and retaliation for reporting "racial epithets" to management in violation of Title VII. In this action, Mpoyo asserts Litton violated (1) the FMLA by placing him on administrative leave when he had a serious medical condition covered under the Act's leave provisions and (2) the FLSA by failing to pay him overtime compensation.

*Id.* at 987.

¶ 25 In determining that claim preclusion was applicable notwithstanding these different rights, the court emphasized, "[w]e have often held the common nucleus criterion to be outcome determinative under the first res judicata element." *Id.* at 988; *see also Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183 (11th Cir.2003).

---

8. By holding that the claims under the Arizona Constitution could have been raised in federal court, as well as state court, we are not suggesting that the claims are legally cognizable or valid. We are only stating that the claims could have been raised in either forum. *See, e.g., Single Moms, Inc. v. Mont. Power Co.*, 331 F.3d 743, 749 (9th Cir.2003) ("Having rejected the plaintiffs' federal constitutional claims, we turn to the plaintiffs' state constitutional claims."); *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 643

F.Supp. 1217, 1221 (D.N.J.1986) ("Since the federal and state constitutional claims derive from a common nucleus of operative fact, and since the court has jurisdiction over the parties, and the federal claims asserted by plaintiffs are substantial, the pendent state [constitutional] claims are properly before the court."). They are therefore barred based on claim preclusion. As stated herein, the constitutional claims themselves present unresolved questions of law that we do not decide.

¶ 26 Because this action arises out of the same nucleus of facts and all of the Howells' claims in the state court action could have been raised in the federal court action (or vice versa), claim preclusion applies.[9] Therefore, we find that the trial court erred by failing to bar all of the Howells' claims in the state proceeding. Accordingly, for this reason, we affirm the entry of judgment in favor of Johnson and Hodap, vacate the entry of judgment in favor of Patti Howell, and direct entry of judgment in favor of Hodap on that claim.

## III.

¶ 27 For the foregoing reasons, and those set forth in the separately filed memorandum decision, we affirm in part and reverse in part.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge and JOHN C. GEMMILL, Judge.

9. Even if the four-part test were applied, the result would be the same. The four-part test adds consideration of "(2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." *Mpoyo,* 430 F.3d at 987. As to factor 4, substantially the same evidence was presented in both actions. As to factor 3, although there may be some difference in the specific rights alleged, they all flow from the same general specie of right: protection from an unreasonable search. As *Mpoyo* held, even if there is a difference in the rights brought in the state court, this difference may not be outcome determinative, depending on the other factors. As to factor 2, the rights or interests established in the prior judgment worked in favor of Johnson and Hodap, not the Howells. Accordingly, this factor weighs in favor of the defendants. Thus, applying the four-part test, three of the four factors clearly weigh in favor of the defendants, and the application of that test would result in claim preclusion.